Walker vs. Village of Ontario.

WALKER, Appellant, vs. VILLAGE OF ONTARIO, Respondent.

*May 23— June 20, 1901.*

*Highways and bridges: Use by traction engines: Injury from breaking of bridge: Contributory negligence.*

1. The requirement of ch. 197, Laws of 1899, in respect to the spanning of a bridge, before crossing with a steam engine, "with hardwood planks at least two inches thick and twelve inches wide, so that the engine shall rest thereon in crossing," is sufficiently complied with if the tracks upon which the wheels of the engine run are of the required thickness and width, though made up of narrower planks laid side by side.

2. Failure to comply with such requirement of the statute is not a defense to an action for injuries caused by the breaking down of a bridge, unless there was some direct causal relation between such failure and the accident.

3. Ch. 197, Laws of 1899, impliedly justifies the use of highways and bridges by traction engines, without liability on the part of owners, if they comply with its requirements; and *it would seem* that the proper authorities are under obligation to keep up their highways and bridges to a standard of usefulness and safety sufficient for such use.

4. Where the defective and rotten condition of the stringers and braces of a bridge was not so obvious as to be discoverable by ordinary observation, there was no conclusive inference of contributory negligence on the part of a person who was injured by the break-

Walker vs. Village of Ontario.

ing of the bridge while he was attempting to cross it with a traction engine weighing 9,500 pounds, although he had passed over the bridge daily, knew it was twelve or thirteen years old, and did not test the structure by boring into the timbers.

APPEAL from a judgment of the circuit court for Vernon county: E. W. HELMS, Judge. *Reversed.*

Action to recover damages for personal injuries. Plaintiff was steersman on a traction engine weighing 9,500 pounds. In attempting to cross a bridge in the defendant village, it broke down, and plaintiff was precipitated into the stream and received serious injuries. The bridge had been built some twelve or thirteen years. Its timbers were badly rotted, and the braces decayed considerably. Plaintiff was familiar with the bridge, passing over it daily, but had never noticed its defective condition. He had known the bridge twelve or thirteen years, and the only repairs he knew had been done to it were that it had been replanked. It had a span of twenty feet, and broke nearly in the middle. Before crossing, the bridge was spanned by elm planks two inches thick, from twelve to fourteen feet in length, and from eight to ten inches wide. Testimony was offered and received showing the manner in which the planks were laid, the care used in crossing, the rotten and defective condition of the timbers and braces, and that the average life of a wooden bridge was about eight years. At the close of plaintiff's testimony a motion was made for a nonsuit, on the ground that the evidence affirmatively showed a failure to comply with subd. 5, sec. 1, ch. 197, Laws of 1899, and that plaintiff was guilty of contributory negligence. The motion was granted, the court stating, among other things, that " I don't think the court can take judicial notice of the fact that traction engines are in common use over the highways in this vicinity." From a judgment for defendant the plaintiff brings this appeal.

*C. M. Masters,* for the appellant, argued, among other

things, that municipalities may be responsible for injuries even though the plaintiff was using the highway in an *uncommon* manner. Unless such "uncommon use" is one that might not have been anticipated by the municipal authorities by the exercise of reasonable prudence and care, considering the kind, nature, and extent of public travel in that vicinity, and increases the danger of an accident, the highway must be maintained in a reasonably safe condition for such use. *Anderson v. St. Cloud,* 79 Minn. 88; *Gregory v. Adams,* 14 Gray, 242; *Wilson v. Granby,* 47 Conn. 59, 36 Am. Rep. 51; *Vermillion Co. Comm'rs v. Chipps,* 131 Ind. 56; *Shelby Co. Comm'rs v. Castetter,* 7 Ind. App. 309. The question of contributory negligence, or rather the question whether the plaintiff was subjecting the bridge to an unusual and extraordinary load, is a matter of defense to be alleged, and the evidence upon which the same is predicated submitted to the jury for decision. There can be no presumption that the use of traction engines upon the public highways is an extraordinary use thereof. What is a probable, ordinary, and usual use is as much a matter of fact for the jury as is the question as to whether or not the bridge was in a reasonably safe condition, or whether the defendant could by the exercise of reasonable diligence have discovered its defective condition. *Yordy v. Marshall,* 80 Iowa, 405, 86 Iowa, 340; *Wabash v. Carver,* 13 L. R. A. 851; *Clark Co. Comm'rs v. Brod,* 3 Ind. App. 585; *Gregory v. Adams,* 14 Gray, 242; *Hardin Co. Comm'rs v. Coffman,* 48 L. R. A. 455; *Moore v. Hazelton,* 118 Mich. 425; *Allen Co. Comm'rs v. Creviston,* 133 Ind. 39; *La Porte Co. Comm'rs v. Ellsworth,* 9 Ind. App. 566; *Coulter v. Pine,* 164 Pa. St. 543; *Clapp v. Ellington,* 51 Hun, 58; *Reinhart v. Martin Co. Comm'rs,* 9 Ind. App. 572; *Clulow v. McClelland,* 151 Pa. St. 583, 17 L. R. A. 650.

For the respondent there was a brief by *Graves & Mahoney,* and oral argument by *C. W. Graves.* They contended,

*inter alia,* that the village officers were only required to construct a bridge strong enough for the usual and ordinary travel thereover at the time of its construction; they are not compelled to anticipate extraordinary loads. *McCormick v. Washington,* 112 Pa. St. 185; *Fulton I. & E. Works v. Kimball,* 52 Mich. 146; *Hardin Co. Comm'rs v. Coffman,* 48 L. R. A. 455; *Clulow v. McClelland,* 151 Pa. St. 583; *Allen Co. Comm'rs v. Creviston,* 133 Ind. 39; *Clapp v. Ellington,* 51 Hun, 58; *Megargee v. Philadelphia,* 153 Pa. St. 340; *Medina v. Perkins,* 48 Mich. 67; *Chicago v. Kohlhof,* 64 Ill. App. 349; *Stebbins v. Keene,* 60 Mich. 217; *Spencer v. Sardinia,* 42 App. Div. 472; *Bonebrake v. Huntington Co. Comm'rs,* 141 Ind. 62; *Dexter v. Canton T. B. Co.* 79 Me. 563; *Richardson v. Royalton & W. T. P. Co.* 5 Vt. 580; *Woodbury v. Owosso,* 64 Mich. 239; *O'Neil v. Deerfield,* 86 Mich. 610; 4 Am. & Eng. Ency. of Law (2d ed.), 935; Elliott, Roads & S. (2d ed.), § 40; 8 Cent. Dig. col. 1145. Noncompliance with ch. 197, Laws of 1899, bars a recovery. Sec. 154, ch. 568, Laws of N. Y. 1890; *Bush v. D., L. & W. R. Co.* 166 N. Y. 210; No. 173, Laws of Pa. 1885; *Comm. v. Allen,* 148 Pa. St. 358; sec. 3, ch. 50, R. S. Me.; *Dexter v. Canton T. B. Co.* 79 Me. 563; sec. 5, ch. 68, Laws of Iowa, 1892; *State v. Orr,* 89 Iowa, 613; *Welch v. Geneva,* 110 Wis. 388.

BARDEEN, J.    One of the grounds urged to justify the nonsuit is that plaintiff failed to comply with the requirements of ch. 197, Laws of 1899.    That chapter provides, among other things, that the owner of any steam engine who propels it or causes it to be moved along or upon any culvert or bridge shall be liable for all damages (subd. 5, sec. 1) "when the person in charge of any steam engine shall neglect to span any bridge or culvert, before crossing the same, with hardwood planks at least two inches thick and twelve inches wide, so that the engine shall rest thereon in crossing such

bridge or culvert." Plaintiff's testimony as to the manner in which the bridge was planked is as follows:

"Mr. Ritske and I put the plank on the bridge. The plank used were some planks lying there. They were rock-elm plank, I think. They were good, sound plank. Were reasonably straight. The plank were twelve feet long; perhaps one or two fourteen feet. I think one or two of the plank were eight inches wide, and the balance ten inches wide, and one or two twelve inches wide. Am not positive that there were any twelve inches wide. The plank run across the bridge from cap to cap. Then laid down another plank beside them, so as to break joints. Planked both sides alike. . . . The plank were laid side by side, end to end, and another row, breaking the joints, at the side. The joints were broken by laying the plank side by side. The wheels were kept on the plank."

The argument is that, because the planks used were not twelve inches in width, the statute has not been complied with, and hence there can be no recovery. If we understand the testimony quoted, the track upon which the wheels of the engine ran was more than twelve inches in width, but was made up of two planks instead of one. If this is so, the spirit of the statute has been complied with. The plain purpose of the law was to protect the covering of the bridge from injury by the projections or calks on the wheels of the engine. This could be done by two planks placed side by side, as well as by a single plank, if they were together of the required width.

Another important consideration in this connection must be mentioned. To make the failure to comply with the requirements of the statute a defense, it must be shown that there was some direct causal relation between such failure and the accident which followed. This was discussed in *Sutton v. Wauwatosa*, 29 Wis. 21, and emphasized in the late case of *Welch v. Geneva*, 110 Wis. 388. We do not think the trial court was justified, as a matter of law, in saying that such connection or relation existed in this case. The

Walker vs. Village of Ontario.

testimony regarding the defective character of the bridge was quite strong, and, when considered in connection with the other circumstances, there was room for a fair inference that there was no causal relation between the failure to properly plank the bridge and the accident which happened.

It is further argued that the plaintiff was guilty of contributory negligence as a matter of law. The bridge had been built twelve or thirteen years. The stringers and braces were defective and rotten. It does not appear just how close an examination of the bridge would have been required to have discovered these defects, except that one witness said that the usual method of testing such structures was to take a small bit and bore into the timbers. The plaintiff knew of the age of the bridge, and had passed over it daily. So far as he knew, the only repairs that had been made upon it were that it had been replanked some years previous. If the defects mentioned were so obvious that in the exercise of ordinary care the plaintiff could have discovered them, then of course he was guilty of negligence in attempting to cross. But that fact does not clearly appear. Ordinary care did not require him to make the test spoken of by the witness. He was only bound to make use of his senses, and make such observations as common prudence would seem to dictate, in view of his knowledge and all the surrounding circumstances. We do not think the inference of negligence was so conclusive as to justify taking the question from the jury.

A remark of the court, in deciding the motion for nonsuit, to the effect that the court could not take judicial notice that traction engines were in common use over the highways in that vicinity, is supposed to have some significance. If the court was attempting to justify the nonsuit on the ground that a traction engine, weighing 9,500 pounds, was an unusual and uncommon vehicle on the highways, he would seem to be running in the face of the statute. Ch.

197, Laws of 1899, impliedly, at least, justifies the use of highways by such means, without liability on the part of owners, if they comply with its requirements. The fact that the legislature has seen fit to enact regulations concerning the use of engines on highways generally would seem to imply an obligation on the part of the authorities to keep up their highways and bridges to a standard of usefulness and safety sufficient to meet those requirements. Under the proof, however, the court was not required to assume judicial notice of the fact mentioned. One witness, at least, testified to the use of such engines in that vicinity for a number of years, and that was sufficient to carry the case to the jury, if it was deemed of controlling importance. Upon the whole evidence, we think the case should have been submitted to the jury.

*By the Court.*— The judgment is reversed, and the cause is remanded for a new trial.