LLOYD, Respondent, vs. PUGH, Appellant.

*October 6—October 27, 1914.*

*Highways: Collision between vehicles: Negligence: Contributory*
*negligence: Right of way: Statute construed: Violation of*
*safety statute.*

1. Where a collision occurs between vehicles on a highway, failure
   on the part of the injured party to exercise ordinary care to
   prevent the collision is contributory negligence which defeats
   recovery, where such failure is the proximate cause of the in-
   jury.
2. That part of sec. 1636—49, Stats., which deals with the right
   of way at street intersections, applies to all vehicles.
3. Ordinarily the violation of a safety statute is negligence. This
   rule depends on presumed legislative intent, but the tendency
   of the courts is generally in the direction of finding such in-
   tent.
4. Where the unlawful act of a person traveling in a highway is
   a contributing cause of his injury, there can be no recovery.
5. Where, under sec. 1636—49, Stats., the driver of defendant's
   heavily loaded wagon going up an incline had the right of
   way over plaintiff, who was approaching in a buggy on a cross
   street from the left, but plaintiff in violation of the statute at-
   tempted to pass in front of the wagon and was injured in the
   resulting collision, there could be no recovery for such injury.

APPEAL from a judgment of the circuit court for Racine
county: E. B. BELDEN, Circuit Judge. *Reversed.*

This is an action to recover damages for personal injuries
sustained by the plaintiff by reason of a collision between a
single buggy in which she was riding and the tongue of a
coal wagon. The jury found the defendant negligent and
the plaintiff free from contributory negligence and assessed
plaintiff's damages at $500. From a judgment entered on
this verdict defendant appeals. The defendant contends that
the court should have held as a matter of law that defendant
was not negligent and that plaintiff was guilty of contribu-
tory negligence. Also that the damages recovered were ex-

cessive and that errors committed in rulings on evidence and in instructions given to the jury and in refusing to instruct as requested resulted in a mistrial in any event.

State street in the city of Racine runs east and west. The northerly end of Ontario street is at State street and it extends from State street in a direction somewhat south of southeast. The collision took place a little to the north of the intersection. The plaintiff was proceeding east on the south side of State street about midway between the south rail of the street-car track and the curb. The distance between these two points is nineteen feet. She intended to turn south on Ontario street and veered somewhat to the north for the purpose of making the turn. She observed the coal wagon on Ontario street approaching State street and concluded that it was in such a position that she could not pass it, so she decided to proceed east along State street. It does not appear that at any time she approached the street-car track close enough to collide with a car. Before swerving to the north she looked back and saw a street car some distance back of her and west of the tracks of the Chicago, Milwaukee & St. Paul Railway Company. She knew that the car stopped before crossing the railroad tracks and that the conductor went ahead to see that the track was clear. She testified that she did not swerve farther to the north when passing in front of the coal team because of the car which she saw behind her. She really gave no explanation as to why she did not stop to let the coal team go by. She was an experienced driver, and her horse was perfectly gentle and not afraid of street cars. There was some evidence that she speeded up her horse, but this she denies, although she did not deny that she slapped it with the lines as she was about to pass. Aside from the street car, the coal wagon, and plaintiff's buggy, there were no other vehicles in the vicinity of the collision, and there is no evidence tending to show where the street car was at that time. There was a building

on the corner at the intersection of the south line of State street and the westerly line of Ontario street.  The corner of the building was cut away, however, and the sidewalks were quite wide, and there was nothing to prevent either of the parties from seeing the other in time to prevent a collision. Ontario street is paved with brick.  The up grade in approaching State street is substantial and is greater on the east side of the street than on the west.  On the east side there is a rise of about twenty-one inches in thirty-one feet, and of 3.56 feet in eighty-four feet.  The corresponding rises on the west line of the street are.1.2 feet and 2.36 feet.

The curb line on the west intersection of the southwest line of Ontario street with the south line of State street is 2.5 feet lower than the point where the east curb line of Ontario street intersects the south line of State street.  The distance between the curb lines of Ontario street is 38.5 feet. There is a fall to the west on Ontario street of 2.8 feet in a distance of 38.5 feet.  At a point eighty-four feet south of the State street intersection it is substantially a foot lower on the west than on the east side of the street.  There is evidence which warranted the jury in finding that at the time of the collision the defendant's horses were somewhat to the west of the center line of Ontario street and headed in a northwesterly direction.  The elevation of the crown of Ontario street at the point of intersection with State street is eight inches higher than the west gutter and 1.3 feet higher than the edge of the east side of the walk.  The crosswalk is brick.  In the center the elevation of the south line of State street is practically the same as the elevation of the center of the crosswalk.  From the gutter line of State street to the center line of Ontario street the fall is about three and one-quarter inches.

It is undisputed that Ontario street was somewhat slippery; that the coal wagon and the coal therein weighed five tons or more; that it was a hard pull for the team to make

the ascent; and that it was proceeding very slowly. The plaintiff and another witness testified that the driver was holding his lines loosely and that he apparently made no attempt to stop the team. The driver testified on his examination under sec. 4096, Stats., that he did not change his course or slacken his speed on account of the buggy. On the trial he testified: "It was not possible to stop at all my team when it was pulling up the grade. My load would have slipped backwards and my horses would have been slipping all over themselves. If I had stopped, my team could not have started that load on that grade." He further said that the end of the pole of his wagon struck the buggy when he was coming over the crosswalk with the front wheels; that he pulled up his horses and held them back as much as he could; that he did not try to stop them in any way or turn them to the west, but went straight on; that there was a depression in the street beyond the crosswalk which caused the wagon to lurch forward; that he had a tight line on his horses; that he thought the buggy would clear, and that it would have done so had the wagon not lurched forward after the front wheels struck the depression. As it was, the end of the tongue caught between the spokes of the rear wheel of the buggy.

For the appellant there was a brief by *Thompson, Myers & Kearney,* attorneys, and *Thomas M. Kearney,* of counsel, and oral argument by *W. D. Thompson.*

For the respondent there was a brief by *Simmons & Walker,* and oral argument by *M. E. Walker.*

BARNES, J. Travelers on our highways have mutual rights and owe mutual obligations to one another. One of those obligations is to use ordinary care to prevent collisions. When a collision does occur, it will not do to hold one party to a high degree of care and exempt the other from exercising any degree of care whatever. We have no statute per-

mitting the injured party to secure a partial recovery where neither party exercises ordinary care. Failure on the part of the injured party to exercise such care is contributory negligence which defeats recovery where such failure is the proximate cause of the injury.

The essential facts in this case have been quite fully set forth, and if the jury was warranted in finding that the driver of the coal wagon did not exercise ordinary care, we see no escape from the conclusion that the finding that plaintiff did exercise such care is clearly wrong, because, if defendant's servant was negligent, it is evident that plaintiff was more negligent than he. We think there is no room for controversy on this point. It should be borne in mind that in our congested public streets people make close calculations and frequently take a good many chances, and that actual rather than theoretical conditions should be taken into account in determining what is ordinary care. Both of these parties no doubt thought they could proceed without a collision. They were mistaken in their calculations, by the narrowest kind of a margin, and probably because of the sudden forward movement of the coal wagon when its front wheels struck the downward incline.

Undoubtedly the defendant's vehicle had the right of way. This is so under sec. 1636—49. The portion of this statute dealing with the right of way at street intersections obviously includes all vehicles. If there were no statute on the subject the defendant would be entitled to the right of way under the charter of the city of Racine. This statute was unquestionably violated by the plaintiff. It is a safety law, and ordinarily the violation of such a statute is negligence. The rule is not universal in its application, but depends on presumed legislative intent. *Griswold v. Camp,* 149 Wis. 399, 402, 135 N. W. 754. The tendency of the courts, however, is generally in the direction of finding such intent. *Smith v. Milwaukee B. & T. Exch.* 91 Wis. 360, 64 N. W. 1041.

In *Welch v. Geneva*, 110 Wis. 388, 390, 85 N. W. 970, it was held that where the unlawful act of a person traveling in a highway contributes to his injury there can be no recovery, and this ruling is followed in *Walker v. Ontario*, 111 Wis. 113, 117, 86 N. W. 566. These cases are distinguished from *Sutton v. Wauwatosa*, 29 Wis. 21, where recovery was allowed for injury to cattle being driven over a defective bridge on Sunday, because it is said that there was no causal connection between the violation of the Sabbath laws and the defective bridge. There was some evidence tending to show that defendant's team was somewhat to the west of the center of Ontario street when the collision occurred. This would be significant if plaintiff's vision was interfered with by reason of the team being on the wrong side of the road. But she had plenty of opportunity to see the team and did see it, and, having seen it, she should have yielded the right of way if she could not safely pass. We observe no reason why she could not have stopped her horse or looked back again to see if the street car was in such a position that she might pull her horse to the north so as to keep out of the way of defendant's team. She knew the team was heavily loaded and was laboring hard in its attempt to climb the incline and that it would be difficult for the driver to stop it or change its course. The trial court seemed to think that the jury might find that plaintiff was confronted with an emergency and that she simply committed an error in judgment. We do not know what the emergency was. She does not claim that she would be in any danger from the street car if she stopped in time to allow the coal wagon to pass, or that the driver of the coal wagon would deliberately run her down. The most charitable assumption is that plaintiff made an error in judgment in thinking she could pass safely. If this charity be extended to her it should also be extended to the driver.

It is immaterial whether we hold that defendant was not

negligent or allow the finding of negligence to stand. If the finding be permitted to stand, then the finding that plaintiff exercised ordinary care cannot stand. In any view of the case plaintiff cannot recover.

*By the Court.*——Judgment reversed, with directions to dismiss the complaint.