KALKOPF and others, Plaintiffs, v. DONALD SALES & MANUFACTURING COMPANY and others, Defendants and Appellants: MCKESSON & ROBBINS, INC., Defendant and Respondent.

*November 29, 1966—January 3, 1967.*

250

For the appellants there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Norman C. Skogstad* and *Thomas N. Klug* of counsel, all of Milwaukee, and oral argument by *Mr. Klug.*

For the respondent there was a brief by *Kivett & Kasdorf,* attorneys, and *Alan M. Clack* of counsel, all of Milwaukee, and oral argument by *Mr. Clack.*

HEFFERNAN, J.  The appellants contend that error was committed in several respects in the trial of this case.

*Was it error to exclude appellant's offer of evidence in regard to the custom and practice in the industry regarding the shipping of acid carboys?*

Over the objection of the appellant, the warehouse foreman of McKesson & Robbins was permitted to testify:

"The procedure that we follow is that if we have a complete load of acid we have no reason to secure the load, but in the event there is a partial shipment of acid, we have a chain, chains, fastened to the stakes and these chains have what they call a Mighty Mite Chain-Titener, and we secure these containers by means of the chain so that they have no possible chance of falling either backward or sideways, whichever the case might be."

Subsequent testimony made it clear that it was not the practice for Donald Sales to secure the carboys in that manner, or by piling other merchandise around them, or by tieing them down.  Appellant attempted to call an employee of another chemical company, who was qualified as an expert on the selling, crating, and trucking of sul-

phuric-acid carboys. Appellant's counsel attempted to elicit testimony from him as to whether it was customary in the industry to secure the carboys as respondent's superintendent claimed it did. The court excluded such evidence. Although the record is not completely clear, it seems as though the trial court treated such proffered testimony as an offer of proof that the practice in the industry was contrary to the contention of McKesson & Robbins.

The respondent on appeal takes the position that, in any event, the appellant's practice of transporting acid carboys without securing them to the sides of the truck is patently unsafe and, hence, proof of conformance to a similar industry-wide standard would not be admissible. The respondent is, of course, correct in asserting that, under extreme cases, evidence of custom may merely be evidence of customary negligence and should, therefore, be excluded. This court has recognized this position, stating:

"A usage which is patently unsafe . . . or a custom which is contrary to law cannot be given credence by the court." *Raim v. Ventura* (1962), 16 Wis. (2d) 67, 72, 113 N. W. (2d) 827.

See also *Johannsen v. Peter P. Woboril, Inc.* (1952), 260 Wis. 341, 345, 51 N. W. (2d) 53; and *Bellmann v. National Container Corp.* (1958), 5 Wis. (2d) 318, 325, 92 N. W. (2d) 762. In *Marsh Wood Products Co. v. Babcock & Wilcox Co.* (1932), 207 Wis. 209, 219, 240 N. W. 392, we stated:

"Obviously, manufacturers cannot, by concurring in a careless or dangerous method of manufacture, establish their own standard of care."

But these are exceptions to the rule and are applicable only if the conduct was so patently unsafe that the court could rule as a matter of law that they should not be

given credence and therefore should be excluded. This court recognizes the almost universally accepted rule as stated in Prosser, Law of Torts (hornbook series, 3d ed.), p. 168, sec. 33:

". . . evidence of the usual and customary conduct of others under similar circumstances is normally relevant and admissible, as an indication of what the community regards as proper, and a composite judgment as to the risks of the situation and the precautions required to meet them. If the actor does only what everyone else has done, there is at least an inference that he is conforming to the community's idea of reasonable behavior."

We stated in *Raim v. Ventura, supra,* page 72, that:

"While the practice in the community or the custom in the trade is not conclusive as to what meets the required standard for reasonable safety, it may be admissible as evidence in connection therewith depending upon the circumstances of the case."

And in *Bandekow v. Chicago, B. & Q. R. Co.* (1908), 136 Wis. 341, 343, 117 N. W. 812, we pointed out:

". . . proof that the conduct of a defendant coincided with the customary method of doing the business by others under similar circumstances excludes the inference of negligence. . . ."

Accordingly, we conclude that the evidence of custom of the methods of stowing and transporting acid carboys should have been admitted into evidence. There was nothing to indicate that the practice followed by defendant was patently unsafe, and the trial judge made no finding to that effect. A perusal of the record indicates that the testimony was excluded primarily upon the basis of the judge's belief that negligence was, in any event, established by what he considered to be a violation of statutory standards of due care, and that he considered the question of proper storage irrelevant in view of the statutory standards established by sec. 346.94 (7), Stats.

*Does the violation of sec. 346.94 (7), Stats., in regard to spilling loads of waste or foreign matter on the highway, constitute negligence per se?*

Sec. 346.94 (7), Stats., provides:

"SPILLING LOADS OF WASTE OR FOREIGN MATTER. The operator of every vehicle transporting waste or foreign matter on the highways of this state shall provide adequate facilities to prevent such waste or foreign matter from spilling on or along the highways."

Over the objection of the appellants, the court instructed the jury:

"You are further advised that under the law of this state, the spilling of foreign matter on highway is prohibited."

This instruction was given pursuant to the theory that:

"When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard for all members of the community, from which it is negligence to deviate." Prosser, Law of Torts (hornbook series, 3d ed.), p. 191, sec. 35.

The Restatement of Torts (2d) suggests guidelines to be followed in determining whether a legislative enactment should be used in the court's determination of the standard of reasonable care in a negligence action:

"Sec. 286. When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted
"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
"(a) to protect a class of persons which includes the one whose interest is invaded, and
"(b) to protect the particular interest which is invaded, and
"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results." Restatement, 2 Torts (2d), p. 25.

"Sec. 288. When Standard of Conduct Defined by Legislation or Regulation Will Not Be Adopted

"The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively

"(a) to protect the interests of the state or any subdivision of it as such, or

"(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or

"(c) to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public, or

"(d) to protect a class of persons other than the one whose interests are invaded, or

"(e) to protect another interest than the one invaded, or

"(f) to protect against other harm than that which has resulted, or

"(g) to protect against any other hazards than that from which the harm has resulted." Restatement, 2 Torts (2d), p. 31.

2 Harper and James, Law of Torts, p. 997, sec. 17.6, summarizes the general attitude of courts in the application of the statutory standards in negligence cases, stating:

". . . where legislation prescribes a standard of conduct for the purpose of protecting life, limb, or property from a certain type of risk, and harm to the interest sought to be protected comes about through breach of the standard from the risk sought to be obviated, then the statutory prescription of the standard will at least be considered in determining civil rights and liabilities."

This court has closely followed these principles and, as a shorthand method of expressing the composite of the principles set forth above, has asked whether the statute has as its purpose the protection of public safety or has

stated as in *Meihost v. Meihost* (1966), 29 Wis. (2d) 537, 540, 139 N. W. (2d) 116:

". . . where a statute is designed to protect a class of persons from a particular type of harm, a violation of the statute which results in that type of harm to someone in the protected class constitutes negligence *per se.*"

In *Meihost, supra,* we determined that the ordinance providing penalties for leaving a key in an automobile did not result in the finding of negligence *per se,* when this court determined that the purpose of the underlying statute was not to protect the members of. the public against the possibility of the automobile being driven in a negligent manner but was merely for the purpose of deterring the theft of motor vehicles. For a similar rationale, see *Reque v. Milwaukee & Suburban Transport Corp.* (1959), 7 Wis. (2d) 111, 114a, 95 N. W. (2d) 752, 97 N. W. (2d) 182; *Farmers Mut. Automobile Ins. Co. v. Gast* (1962), 17 Wis. (2d) 344, 348, 117 N. W. (2d) 347; *Lloyd v. Pugh* (1914), 158 Wis. 441, 445, 149 N. W. 150; *Willette v. Rhinelander Paper Co.* (1911), 145 Wis. 537, 130 N. W. 853; *Schweikert v. John R. Davis Lumber Co.* (1911), 145 Wis. 632, 637, 130 N. W. 508.

It is clear also that sec. 346.94 (7), Stats., was not enacted in the interests of public safety. In the recent case of *Ivy v. Tower Ins. Co.* (1966), 32 Wis. (2d) 231, 145 N. W. (2d) 214, we rejected the appellant's contention that a companion section, 346.94 (6m), was applicable where the wheel of the vehicle had propelled a piece of concrete debris across the pavement when we characterized that section as an "anti-littering" provision. The legislative history of sec. 346.94 (7) makes it clear that it was not intended to set a standard of due care to be applied in negligence actions. It was created by the Laws of 1957, ch. 451, which had its genesis in Bill No. 233, A., proposed by Assemblyman Peterson at the request of the "Governor's Keep Wisconsin Clean and Beautiful Commission." The legislative introduction to the bill described

its purpose as "relating to littering highways and other property with foreign substances and providing a penalty." The various amendments to the bill were entitled "Litterbugs prohibited" and "Littering prohibited." Neither the legislative history nor the face of the statute indicates any purpose to protect the general safety or to protect the plaintiffs against the harm that occurred. It is instead an anti-littering statute designed to accomplish the legislative objective to "Keep Wisconsin Clean and Beautiful." It was error for the trial judge to utilize this statute in its instructions to the jury in regard to the standard of care to be used.

The court in addition instructed the jury that:

"You are further instructed that the placing of injurious substances upon a highway is prohibited under our law. No person shall place or cause to be placed upon a highway any foreign substance which is or may be injurious *to other users of the highway.*" (Emphasis supplied.)

This was a modified and consequently inaccurate paraphrase of sec. 346.94 (5), which provides:

"PLACING INJURIOUS SUBSTANCE ON HIGHWAY. No person shall place or cause to be placed upon a highway any foreign substance which is or may be injurious *to any vehicle or part thereof.*" (Emphasis supplied.)

The correct statement of the statute makes it apparent that the purpose of the statute was to protect vehicles or parts of vehicles from foreign substances on the highway and it is not designed to protect persons from physical injury. Therefore, the standards of the statute will not be adopted as setting a standard of reasonable care in this instance, in that its purpose was to protect another interest than the one invaded.[2] It was error to include

---

[2] We do not find that sec. 346.94 (5), Stats., was not a safety statute in respect to interest protected, *i.e.,* "vehicle or part thereof."

reference to this section of the statute in the instructions to the jury.

While the trial judge did not make a finding of negligence *per se* as a result of the violation of these two subsections of the statute, the entire tenor of his instructions makes it apparent that he gave them great weight and led the jury to conclude that they were of paramount importance. His theory in excluding the evidence of the custom of the trade in transporting carboys seems to have been made with the idea that this item of negligence was almost irrelevant in light of the absolute prohibitions of the statute in regard to scattering debris and spilling injurious substances on the highway. We would, therefore, under ordinary circumstances, conclude that this exclusion of evidence, coupled with the erroneous application of statutory standards, constituted prejudicial error. We, however, cannot so conclude in this case. This is an action tried for the purpose of determining whether or not the appellant, Donald Sales & Manufacturing Company, should have contribution against McKesson & Robbins. The *sine qua non* of Donald Sales' success in this action is a finding of negligence against McKesson & Robbins. Appellant assumes that, had the errors in excluding evidence and in the instructions not occurred, no negligence would have been assessed against Donald Sales & Manufacturing Company. This assumption is perhaps warranted by the evidence, but even though true, appellant would not be in a better position than he is now, for in order to recover, the respondent must be found negligent. Although appellant were free from negligence, no recovery could be had against the nonnegligent respondent, McKesson & Robbins. We, therefore, must conclude that the errors appellant complains of were nonprejudicial, unless it can be shown that it was error to find McKesson & Robbins free of negligence.

*Was there credible evidence which under
any reasonable view fairly admits an in-
ference which would support the jury's
finding that McKesson & Robbins was not
negligent?*

The trial judge properly concluded that the only pos-
sible negligence against McKesson & Robbins was in re-
gard to whether or not it had supplied a defective metal
crate for the polyethylene bottle of acid. The jury found
that McKesson & Robbins was not negligent in that re-
spect. In the recent case of *Delaney v. Prudential Ins. Co.*
(1966), 29 Wis. (2d) 345, 349, 139 N. W. (2d) 48, this
court stated that on appeal:

". . . we must judge the jury verdict in the light of
the familiar rules that (1) a jury verdict will not be up-
set if there is any credible evidence which under any
reasonable view fairly admits of an inference supporting
the findings, (2) this is particularly true when the ver-
dict has the blessing of the trial court, and (3) the evi-
dence is to be viewed in the light most favorable to the
verdict."

Undeniably, the evidence in this regard was conflicting
and contradictory. Respondent's own witnesses were not
in agreement in regard to their observations of the car-
boy at or prior to loading. A Mr. Horan testified that he
had personally loaded the carboys on the truck, that he
had a personal recollection of inspecting these two car-
boys, and that upon inspecting the two crates, he found
them to be sound. However, whatever contradictions
appeared in Horan's testimony (and there were some)
went only to his credibility, which was a matter for the
jury, and his statements were not so patently erroneous or
unbelievable that we could hold, as a matter of law, that
they were incredible. We conclude that the testimony of

Mr. Horan, under the tests set forth above, amply supports the jury's finding.

It should further be noted that there was a complete absence of any evidence to show that the crate was defective before or at the time the accident occurred. While the crate is admittedly defective at the present time, this is not probative of its condition prior to the accident. We conclude that the jury's finding that McKesson & Robbins was not negligent is supported by the evidence.

*In view of the proper finding that McKesson & Robbins was free of negligence, did the errors in submission of appellant's negligence constitute prejudicial error?*

This question has been answered by the discussion set forth earlier in the opinion. In an action for contribution it is apparent that the appellant could not recover unless the person from whom he was seeking contribution was, to some degree at least, negligent. Since McKesson & Robbins was not negligent, appellant was not prejudiced by the errors determined to have been committed in the trial of this matter even though as a result of those errors negligence as to him was erroneously found.

*By the Court.*—Judgment affirmed.