OLSON, Plaintiff-Respondent, v. RATZEL, Defendant-Respondent: NORTHWEST OUTLET, INC., and others, Defendants-Appellants and Third-Party Plaintiffs: CHRISTENSON, Third-Party Defendant-Respondent.†

Court of Appeals

*No. 77-637. Argued December 7, 1978.—Decided March 8, 1979.*
(Also reported in 278 N.W.2d 238.)

† Petition to review denied.

228

For the defendants-appellants there was a brief by *Davis, Witkin, Weiby & Maki, S.C.* and oral argument by *Marc Ashley* of Superior.

For the plaintiff-respondent there was a brief and oral argument by *Toby E. Marcovich* of *Marcovich, Cochrane & Milliken, S.C.* of Superior.

Before Dean, P.J., Donlin, J., and L. J. Charles, Reserve Judge.

DONLIN, J. Gary Olson commenced this action to recover damages incurred when Connie Ratzel shot him with a pistol. The pistol was purportedly "negligently and intentionally" sold to Ratzel, a minor, in violation of Wisconsin and federal statutes.[1] The defendant, Larry Krieps, an employee of the defendant Northwest Outlet, Inc., allegedly made the sale to Ratzel. Defendant St. Paul Fire and Marine Insurance Co. is the insurer of Northwest and its employees. The complaint further al-

---

[1] §941.22, Stats., provides in part:

*941.22 Possession of pistol by minor.* (1) Any minor who goes armed with a pistol or *any person who intentionally sells,* loans or gives *a pistol to a minor may be fined* not more than $500 or imprisoned not more than one year in county jail or both.

(2) This section does not apply to a minor who is armed with a pistol when such pistol is being used in target practice under the supervision of an adult nor does it apply to an adult who transfers a pistol to a minor for use only in target practice under his supervision.

. . . .

(4) In this section "pistol" means any firearm having a barrel less than 12 inches long. [Emphasis added.]

18 U.S.C. §922 provides in pertinent part:

(b) It shall be *unlawful* for any licensed importer, licensed manufacturer, *licensed dealer,* or licensed collector to *sell* or deliver—

(1) any firearm or ammunition . . . other than a shotgun or rifle, or ammunition to a shotgun or rifle, *to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age.* [Emphasis added.]

leged that Olson's injuries were "proximately caused" by Krieps' negligence. In their answer, the defendants-appellants, Krieps, Northwest, and St. Paul (defendants) denied the material allegations of the complaint. The defendants moved for summary judgment on the grounds that violation of the Wisconsin and federal statutes was not negligence *per se,* that Ratzel's actions were a superseding intervening cause of Olson's injuries, and that holding the gun seller liable in this case would contravene public policy.

In its memorandum opinion denying the motion, the court referred to both statutes and apparently ruled that violation of sec. 941.22, Stats., established negligence *per se.* The court also determined Ratzel's acts were an intervening but not an unforeseeable superseding cause of Olson's injuries, that its conscience would not be shocked if the jury returned a verdict imposing liability on the gun sellers, and that public policy considerations did not preclude liability on the sellers.

Although the motion was for a summary judgment, none of the parties submitted affidavits so only the pleadings were before the court. The court assumed the truth of the allegations of the complaint for purposes of ruling on the motion. Thus it was treated as a motion to dismiss for failure to state a cause of action or for judgment on the pleadings.[2] Since the motion has been treated by all concerned solely as one testing the legal sufficiency of the complaint, we will consider it as such.[3]

[2] *See* §§802.06(2)(f), (3), and (8)(b), Stats.; *Kenner v. Edwards Realty & Finance Co.,* 204 Wis. 575, 236 N.W. 597 (1931). *See also De Bauche v. Knott,* 60 Wis.2d 119, 230 N.W.2d 158 (1975); *Ritterbusch v. Ritterbusch,* 50 Wis.2d 633, 184 N.W.2d 865 (1971).

[3] The first stage of the summary judgment methodology is to examine the pleadings to determine whether a cause of action has been stated. *E.g., Krezinski v. Hay,* 77 Wis.2d 569, 253 N.W.2d

The following issues of law are determinative of this appeal:

1. Did the trial court err in ruling that a violation of sec. 941.22, Stats., establishes negligence *per se?*
2. Should this court hold that a violation of 18 U.S.C.A. §922 establishes negligence *per se?*
3. Does the complaint state a cause of action in common law negligence?
4. Did the trial court err in ruling on this record that public policy considerations do not preclude liability for the defendants and that Ratzel's shooting was not a superseding cause of the plaintiff's injuries?

## Negligence Per Se

The plaintiff cites several cases decided in Wisconsin and elsewhere to support his argument that violation of sec. 941.22, Stats., or 18 U.S.C.A. §922 is negligence *per se*. Section 941.22 provides criminal penalties for intentional[4] transfers[5] of pistols to minors.[6] A transferor is

522, 524 (1977). Consistent with the "more exacting appellate scrutiny" required by §802.08, Stats., we review the trial court's decision to deny summary judgment. *Wright v. Hasley,* 86 Wis.2d 572, 273 N.W.2d 319, 322 (1979).

[4] "[I]ntentionally" was added to the language of the predecessor statute as part of the comprehensive revision of the criminal code. Ch. 696, Laws of 1955. *But see* §§939.23(6) and 939.43 (2), Stats. Except for this change, the present statute contains essentially the same language adopted in ch. 329, Laws of 1883. *See also* §4397b, Ann. Stats. (1889); §4397 Ann. Stats. (1898); §340.69, Stats. (1925).

[5] "Transfers" appeared in the first draft of the Revised Criminal Code enacted by the legislature with a delayed effective date. Ch. 623, Laws of 1953. However, before the revision became effective the legislature opted to return to the "sells, loans, or gives" language of the prior statute. Ch. 696, Laws of 1955. "Transfers" as used in this opinion is a shorthand for the actual statutory language.

[6] For definitions of "pistol," see §941.22(4), *supra* note 1; of "minor" as one who has not attained age eighteen, see §990.01(20), Stats.

subject to strict liability[7] with respect to knowledge of the minor's age. The federal statute provides for criminal penalties[8] for sale or delivery of any firearm "other than a shotgun or rifle" to "any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age."[9] In contrast to sec. 941.-22, the federal statute embodies a standard of actual knowledge or negligence with respect to knowledge of age.

Neither the federal nor the Wisconsin statutes expressly create a civil cause of action for statutory violations. The question is thus whether the duty of the defendants should be defined in terms of the criminal standard set by either statute or in terms of the duty of ordinary care applicable generally in negligence cases.

Violations of safety statutes in Wisconsin are ordinarily[10] held to be negligence *per se* and this principle

---

[7] §§939.23(6), 939.43(2), Stats.

[8] The maximum penalty for federal violations is a $5,000 fine and imprisonment for five years. 18 U.S.C.A. §924. Violation of 18 U.S.C.A. §922(b)(1) is one offense which may subject a licensee to the maximum penalty under the Gun Control Act, but it is also unlawful for a federal licensee to sell any firearms in violation of state law, "unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be [such a] violation. . . ." 18 U.S.C.A. §922(b)(2). *See also* 27 C.F.R. §178.-99(b). Thus, it would appear that federal authorities have the option of prosecution under either the federal substantive standard or the Wisconsin standard. Each violation would apparently constitute a violation for purposes of 18 U.S.C.A. §924.

[9] 18 U.S.C.A. §922(b)(1). We assume Northwest was a "licensee." 18 U.S.C.A. §923; 27 C.F.R. §178.41.

[10] *Locicero v. Interpace Corp.*, 83 Wis.2d 876, 266 N.W.2d 423, 427 (1978); *Blanchard v. Terpstra*, 37 Wis.2d 292, 155 N.W.2d 156, 158 n. 1 (1967); *Lloyd v. Pugh*, 158 Wis. 441, 445, 149 N.W. 150, 152 (1914).

frequently[11] has been applied in Wisconsin cases. The general rule in Wisconsin is that violation of a criminal statute is negligence *per se*.[12] Although some cases appear to mechanically apply these general rules, the more recent cases reflect the more qualified approach of the Restatement (Second) of Torts.[13] Whether a statute

---

[11] *Grube v. Moths*, 56 Wis.2d 424, 202 N.W.2d 261, 267 (1972); *Schroeder v. Northern States Power Co.*, 46 Wis.2d 637, 176 N.W. 2d 336 (1970).

[12] *Farmers Mut. Auto. Ins. Co. v. Gast*, 17 Wis.2d 344, 117 N.W.2d 347, 350 (1962); *McAleavy v. Lowe*, 259 Wis. 463, 475, 49 N.W.2d 487, 493 (1951).

[13] *Compare, e.g., McAleavy, supra* note 12 [and] *Pizzo v. Wiemann, infra* note 22 with *Hagerty v. Village of Bruce, infra* [and] *Kalkopf v. Donald Sales and Mfg. Co., infra.*

The Restatement (Second) of Torts §§286, 288 (1965) was quoted with approval in *Hagerty v. Village of Bruce*, 82 Wis.2d 208, 262 N.W.2d 102, 105 (1978); *Kalkopf v. Donald Sales and Mfg. Co.*, 33 Wis.2d 247, 147 N.W.2d 277, 280–81 (1967); *Reque v. Milwaukee & Suburban Trans. Corp.*, 7 Wis.2d 111, 114a, 97 N.W.2d 182 (1959).

*§286. When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted*

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

*§288. When Standard of Conduct Defined by Legislation or Regulation Will Not Be Adopted*

The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively

has as its purpose the protection of public safety is a "shorthand method of expressing the composite of the [Restatement] principles," but a more complete summary of the current Wisconsin approach is "where a statute is designed to protect a class of persons from a particular type of harm, a violation of the statute which results in that type of harm to someone in the protected class constitutes negligence *per se*."[14]

However, the Wisconsin Supreme Court has also frequently held "that statutes are not to be extended so as to impose any duty beyond that imposed by the com-

---

(a) to protect the interests of the state or any subdivision of it as such, or

(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or

(c) to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public, or

(d) to protect a class of persons other than the one whose interests are invaded, or

(e) to protect another interest than the one invaded, or

(f) to protect against other harm than that which has resulted, or

(g) to protect against any other hazards than that from which the harm has resulted.

*See also* Comment d, §286, "[T]he court is free, in making its own judicial rules, to adopt and apply to the negligence action the standard of conduct provided by . . . a criminal enactment . . . . The decision to adopt the standard is a purely judicial one, for the court to make. When the court does adopt the legislative standard, it is acting to further the general purpose which it finds in the legislation, and not because it is in any way required to do so." Comment a, §288, "Section 286 states the conditions under which the courts will normally adopt the [legislative] standard [of conduct as that of a reasonable person], although . . . they are under no compulsion to do so."

[14] *Kalkopf, supra* note 13, quoting *Meihost v. Meihost,* 29 Wis.2d 537, 139 N.W.2d 116, 118 (1966). *See also Fleury v. Wentorf,* 82 Wis.2d 105, 262 N.W.2d 68, 70 (1978); *Weiss v. Holman,* 58 Wis.2d 608, 207 N.W.2d 660, 664 (1973).

mon law unless such statute clearly and beyond any reasonable doubt expresses such a purpose by language that is clear, unambiguous and peremptory."[15] "In . . . a situation, where the legislature enacts a criminal statute and is silent about the civil liability, if any, which attaches to its violation, the courts are free to determine under common-law principles whether the violator is civilly liable for damages to one injured by the violation."[16]

---

[15] *Grube v. Moths, supra* note 11, 202 N.W.2d at 268, quoting in part from *Burke v. Milwaukee and Suburban Transp. Corp.*, 39 Wis.2d 682, 684, 159 N.W.2d 700 (1968); *Delaney v. Supreme Inv. Co.*, 251 Wis. 374, 29 N.W.2d 754, 757 (1947). *Accord, Fleury v. Wentorf, supra* note 14; *Weiss v. Holman, supra* note 14.

[16] *Farmers Mut. Auto. Ins. Co. v. Gast, supra* note 12, 117 N.W.2d at 350. The court also observed "[i]t would be extremely difficult, after imposing liability, under the negligence *per se* doctrine (in *McAleavy v. Lowe*, . . .) upon the violator of a statute prohibiting the sale of adulterated pig food, to relieve from liability one who sold intoxicating beverages to a minor in violation of a statute making it a criminal offense to do so." In *McAleavy v. Lowe*, 259 Wis. 463, 49 N.W.2d 487 (1951), the court adopted a negligence *per se* standard of conduct for liability for damages resulting from sale of adulterated animal food. Violators of the statute involved were subject to strict criminal liability, and, as a result of the case, became subject to strict civil liability. The court purported to be bound by this "harsh result" because the legislature had omitted "knowingly" from the statute. Although the court did not discuss public policy considerations, it is clear that *McAleavy* represents nascent products liability law. For the public policy reasons outlined in later Wisconsin products liability cases, plaintiffs have been relieved of the burden of proving specific acts of negligence in products liability cases. *See Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967). *See generally* Twerski, *From Defect to Cause to Comparative Fault*, 60 MARQ. L. REV. 297, 319 (1977). However, the causal connections between the sale of adulterated food and injuries are much more direct than those involved in the present case. In any event, the balance of public policy factors in favor of products liability is not dispositive of whether gun sellers should be subject to strict liability.

Considerations of public policy have also served to restrict the applicability of the statutory standards of criminal conduct to the duty of a defendant in negligence actions.[17] Such considerations appear to be closely related to "common-law principles" and the certainty with which the court can ascertain a legislative purpose in a statute to create a higher standard of care than that imposed by the common law.

Where a defendant's act amounts to a violation of a standard of care fixed by statute or previous court decision and the violation is held to be negligence *per se,* no inquiry is permitted as to reasonable anticipation or foreseeability of harm. In such cases, the jury will not be permitted to find the harm resulting from the act was unforeseeable and the defendant was therefore not negligent.[18] If, under the particular circumstances, the

[17] *Garcia v. Hargrove,* 46 Wis.2d 724, 176 N.W.2d 566 (1970), 52 Wis.2d 289, 190 N.W.2d 181 (1971).

*Garcia* is the latest of the "dram-shop" cases to be decided by the Wisconsin Supreme Court. In an earlier dram-shop case, *Farmers Mut. Auto. Ins. Co. v. Gast, supra* note 12, the supreme court held there was no liability for the sale of liquor to an intoxicated minor under negligence *per se* or common law negligence theories of liability. The negligence *per se* analysis, rested on a legislative preemption rationale. In *Garcia v. Hargrove, supra,* the court reaffirmed the result in *Gast,* but substituted a public policy basis for its holding of nonliability of liquor sellers. While *Garcia* involved the sale of liquor to an intoxicated person it is clear that its public policy rationale also applies to the sale of liquor to minors. In both *Garcia* opinions, the entire court recognized that public policy considerations, and not mechanical transplanting of a criminal standard of conduct, were determinative of the duty of a seller of a commodity having a significant potential for abuse.

[18] *Osborne v. Montgomery,* 203 Wis. 223, 240, 234 N.W. 372, 378 (1931). *See also Greiten v. LaDow,* 70 Wis.2d 589, 235 N.W.2d 677, 684–85 (1975); *Gies v. Nissen Corp.,* 57 Wis.2d 371, 204 N.W.2d 519, 526 (1973); *Dippel v. Sciano, supra* note 16, 155 N.W.2d at 64; *Reuhl v. Uszler,* 255 Wis. 516, 39 N.W.2d 444, 448 (1949).

interests of the class to which the plaintiff belongs were intended to be protected by the statute, then the negligence *per se* rule applies.[19] If not, where reasonable persons could differ as to the foreseeability that harm would result, the negligence question is for the jury to decide under the general principles of the law of negligence.[20] Restrictions on judicial transplants from the criminal to the civil field run parallel to the foreseeability inquiry in common law negligence analyses. Juries in applying the reasonable person standard in effect determine the limits of reasonableness applicable in a given situation. If the legislature or the court has clearly focused on the particular circumstances and determined the limits of reasonableness therein, then a jury will not be permitted to differ with such a determination.

The Restatement principles restrict the applicability of criminal standards of conduct to civil liability to the particular interest of the protected class as against a particular hazard and kind of harm. Where a statute's purpose is to secure a right to individuals only as members of the public, the Restatement principles do not require adoption of the statutory duty in negligence actions.[21]

The plaintiff relies heavily on a case[22] in which the court held the seller of a toy pistol absolutely liable for the wrongful death of a child. The sale was in violation

---

See generally *Coffey v. City of Milwaukee*, 74 Wis.2d 526, 247 N.W.2d 132 (1976).

[19] *Osborne, supra* note 18.

[20] *Ceplina v. South Milwaukee School Bd.*, 73 Wis.2d 338, 243 N.W.2d 183, 185 (1976); *Padilla v. Bydalek*, 56 Wis.2d 772, 203 N.W.2d 15, 19 (1973), *Osborne, supra* note 18.

[21] Restatement (Second) of Torts §288(b) (1965). *See also* §288, Comments b & c. *But see Coffey v. City of Milwaukee, supra* note 18.

[22] *Pizzo v. Wiemann*, 149 Wis. 235, 134 N.W. 899 (1912).

of the predecessor to sec. 167.10 (6), Stats.[23] The case, decided on demurrer, held the child's parents had a cause of action, the seller's defenses of contributory negligence and supervening cause were without merit, and discussed proximate cause only in terms of the allegations of the complaint. This case antedates the comparative negligence statute,[24] removal of foreseeability as an element of causation in negligence cases,[25] and the current Wisconsin negligence *per se* formulations. Moreover, the case is distinguishable in that it involves an absolute prohibition. In this respect the toy gun case is analogous to cases in which strict liability for the sale of adulterated animal food was held to result from the violation of a statute prohibiting such sales.[26] The Wisconsin Legislature and the Congress have chosen to regulate and not ban entirely the sale of handguns.

The plaintiff also cites numerous cases from other jurisdictions holding "one who sells firearms . . . to a child in violation of a statute is liable for an injury which is the natural and probable consequence of such violation, and which should reasonably have been anticipated by the offender."[27] The cases cited involve different statutes, and the negligence, cause-in-fact, "proximate" cause, and contributory negligence doctrines used are not

[23] §4397a, Stats. (1898) has been incorporated into §167.10 (6), Stats.

[24] §895.045, Stats.; Ch. 242, Laws of 1931.

[25] *Osborne v. Montgomery, supra* note 18.

[26] *E.g., McAleavy v. Lowe, supra* note 12.

[27] Annot., 20 A.L.R.2d 119 §4 at 126 (1951). The annotation states that there appears to be no dissent from the quoted proposition. *But see Whalen v. Bennett*, 4 Mich. App. 81, 143 N.W.2d 797 (1966). The cases cited by the plaintiff appear in the annotation and its supplements, with a single exception, *Zerby v. Warren*, 297 Minn. 134, 210 N.W.2d 58 (1973).

necessarily those applicable in Wisconsin.[28] Factual questions of foreseeability are part of the negligence and not the causation inquiry in Wisconsin tort law.[29]

## Negligence Per Se Under Sec. 941.22, Stats.

Section 941.22, Stats., applies to a wide range of "intentional" transfers of pistols to minors, *i.e.*, sale, gift, or loan. These transfers include transactions for profit as well as gratuitous transfers. The single exception allowed by the statute is for adult supervised target practice. To label sec. 941.22, Stats., as a safety statute implies that the "particular hazard" encompasses all pistol shootings whether intentional, reckless, or negligent, and that the protected class is anyone injured by an illegally transferred pistol. This would remove foreseeability not only from cases involving pistol sales but also from cases involving gratuitous pistol transfers.

A minor who obtains a pistol poses not one but many different risks to public safety. The minor may injure himself as a result of his inexperience. Minors who play with pistols may injure each other. Unsupervised target shooting may lead to injury of innocent third parties. Injuries to members of the public may result from reckless or malicious use of pistols by minors.

The broad scope of sec. 941.22, Stats., the multiplicity of hazards it seeks to deter, and the likelihood it was intended to create only a public duty, give rise to a reasonable doubt that the statute's strict liability standard should serve as the standard of conduct of a reasonable person in negligence cases. Closely related to this conclusion are the considerations of public policy

---

[28] *See e.g., Osborne v. Montgomery, supra* note 18. Other jurisdictions retain a "proximate" cause element in tort actions together with all of its ambiguities.

[29] *Osborne v. Montgomery, supra* note 18.

held to preclude liability of suppliers of intoxicating beverages to those injured by drunken driving of their patrons or guests.[30] "[Q]uestions of causation are naturally a part of the overall consideration of [the] . . . court in making its policy decision."[31] Where "the connection between breach of duty and harm" is not direct and the harm suffered is "a remote or unusual result of the act claimed to be negligent," a "hard" case is presented to the court.[32] Case-by-case determinations of whether public policy factors should relieve an otherwise causally negligent defendant from civil liability are required in such cases.[33] If adoption of a criminal standard of conduct would result in "hard" cases becoming the rule instead of the exception, such adoption would contravene public policy.[34]

Adoption of the strict liability standard of sec. 941.22, Stats., for intentional transfers of pistols to minors would result in an inordinate number of "hard" cases with respect not only to sales of pistols for profit but also for innocent gratuitous transfers among family members. Moreover, the causal connections between sales of intoxicating beverages, drunken driving, and motor vehicle accidents seem much more direct than the connections between sales of pistols and gunshot injuries with respect to time, place, and motives of buyer and seller.

[30] *Garcia, supra* note 17.

[31] *Id.*, 176 N.W.2d at 570.

[32] *Id.*

[33] In *Garcia, supra* note 17, the court distinguished "hard" cases from "mine-run" cases as these terms were used in *Pfeifer v. Standard Gateway Theatre*, 262 Wis. 229, 55 N.W.2d 29, 33 (1952). Even in "hard" cases, generally, the jury should first determine whether a defendant is causally negligent, and then, if necessary, the court should determine whether public policy relieves him or her from liability. *See Coffey, supra* note 18; *Osborne v. Montgomery, supra* note 18.

[34] *Garcia, supra* note 17.

Another policy consideration deemed relevant by the court in the dram-shop case was identification of a sensible starting and stopping point for liability.[35] A sensible cutoff point restricts liability to those cases where causation is direct. The plaintiff argues in effect that selling pistols to those not obviously over eighteen ought to be treated as an ultrahazardous activity. The defendants apparently argue that no liability should ever follow from pistol sales to minors. The most sensible cutoff point for liability is that defined by the common law duty of ordinary care, *i.e.*, at the point where a properly instructed, reasonable jury could find that a pistol transferor's conduct foreseeably created an unreasonable risk of harm to others under the particular circumstances surrounding the transfer.

## Negligence Per Se Under the Federal Statute

Although for the reasons stated we have concluded that violation of sec. 941.22, Stats., is not negligence *per se,* a separate question is presented as to the effect of an alleged violation of 18 U.S.C.A. §922(b)(1) in a negligence action.

The same principles which determine the effect of a Wisconsin statute on the standard of care are applicable to determine the effect of a federal statute or regulation.[36] The federal statute in this case does focus specifically upon federally licensed gun sellers and provides a narrow negligence standard rather than a strict liability standard for violations. The duty of ordinary care focuses the negligence inquiry on a variety of factors bearing on the foreseeability of harm, whereas the

[35] *Garcia, supra* note 17, 176 N.W.2d at 570.
[36] *Locicero v. Interpace Corp., supra* note 10.

federal statute would limit the inquiry to the alternative inquiries concerning the licensee's actual knowledge or reasonable cause to know the handgun purchaser was under twenty-one. After reviewing the extensive legislative history of the federal statute we conclude there is a reasonable doubt about the suitability of the federal criminal and regulatory standard for use as a reasonable person standard in negligence cases.

The provisions of 18 U.S.C.A. §922 were originally enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968[37] and were subsequently amended as part of the Gun Control Act of 1968[38] to cover shotguns and rifles.[39] The legislation represents an attempt to deal with "[the] problem of firearms misuse in crimes of violence" throughout the country and to attack "[t]wo prime sources of firearms to criminals, juveniles, mental defectives, and crime-bent individuals," *i.e.,* mail-order common carrier sales and out-of-state nonresident sales.[40] The Senate Report noted that "juveniles and minors have utilized the anonymity of the mails to order and then receive firearms by common carrier in circumvention and contravention of State and local laws. In contributing to our ever-increasing crime rates, juveniles account for some 49 percent of the arrests for serious crimes in the United States and minors account for 64 percent of the total arrests in this category."[41] Con-

---

[37] Pub. L. No. 90–351 §921–28, 82 Stat. 197, *reprinted in* [1968] U.S. CODE CONG. & AD. NEWS 237, 270.

[38] Pub. L. No. 90–618, §921–28, 82 Stat. 1213, *reprinted in* [1968] U.S. CODE CONG. & AD. NEWS 1397.

[39] See H. R. Rep. No. 1577, 90th Cong., 2d Sess., *reprinted in* [1968] U.S. CODE CONG. & AD. NEWS 4410, 4412.

[40] S. Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* [1968] U.S. CODE CONG. & AD. NEWS 2112, 2163, 2164.

[41] *Id.* at 2165.

gress's formal findings pertinent to juvenile abuse of firearms were as follows:[42]

[T]he ease with which any person can acquire firearms other than a rifle or shotgun (including criminals, juveniles without the knowledge or consent of their parents or guardians, narcotics addicts, mental defectives . . . and others whose possession of such weapons is similarly contrary to the public interest) is a significant factor in the prevalence of lawlessness and violent crime in the United States;
[T]here is a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and youthful criminal behavior, and that such firearms have been widely sold by federally licensed importers and dealers to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior . . . .

The central feature of both pieces of federal gun control legislation is the channeling of legal firearms sales through federally licensed dealers.[43] The Secretary of the Treasury is empowered to revoke licenses and deny license renewals for violation of federal or state statutes or published local ordinances.[44] The Secretary is directed to grant or renew the annual federal licenses unless the applicant has been convicted of a felony or has wilfully violated a provision of the Gun Control Act or the regulations promulgated pursuant to it.[45] Violation of the Gun Control Act, including the provision prohibiting pistol sales to those under twenty-one years of age, is a felony.[46]

[42] Pub. L. No. 90–351, §901, 82 Stat. 197, *reprinted in* [1968] U.S. CODE CONG. & AD. NEWS 237, 270.

[43] 18 U.S.C.A. §923(a).

[44] 18 U.S.C.A. §§923(d), 923(e), 922(b)(1), 922(b)(2). *See also* 27 C.F.R. §§178.71–178.82. *But see* 18 U.S.C.A. §923(d)(1) (C).

[45] 18 U.S.C.A. §922(d)(1); 27 C.F.R. §§178.47, 178.49. *See also* 18 U.S.C.A. §922(h) (illegal for felons to receive firearms); §921(a)(20) (definition of felony); §926 (rule-making authority).

[46] 18 U.S.C.A. §§921(a)(2), 922(h), 922(b)(1), and 924.

The Gun Control Act provisions vest discretion in the Secretary of the Treasury and prosecutors to determine a gun dealer's eligibility for a license and clearly contemplate administrative enforcement as a primary means of achieving the purposes of the Act. The mere existence of an administrative enforcement method would not preclude adoption of the standards set by an enactment as those of a reasonable person in private civil actions. In some circumstances, implying a private remedy would be consistent with the purposes of an enactment. However, where a legislative enactment evinces an intent that it be enforced administratively, especially where its administrators have considerable discretion in distinguishing between consequential and inconsequential violations, reasonable doubt about the applicability of the standards to private rights of action may arise.[47]

The language of the Act and its extensive legislative history do not refer to the risk of injury from gun accidents.[48] Likewise, no reference to the imposition of civil liability for violation of the criminal standards set by the Act appears in the legislative history. This does not preclude the possibility that Congress nevertheless balanced the interests involved and created a standard of

---

[47] See *Continental Ins. Co. v. Daily Express*, 68 Wis.2d 581, 229 N.W.2d 617, 621 (1975); *Posnanski v. Hood*, 46 Wis.2d 172, 174 N.W.2d 528 (1970).

Although illegal contracts and adoption of negligence *per se* standards are different subject matters, the "free from doubt" and "beyond any reasonable doubt" requirements reflect a common concern. Just as the courts should not, in cases of doubt, preempt the right of private parties to enter into contracts, so too the courts should not preempt the role of the jury in ascertaining the limits of due care in cases of doubt.

[48] See also *Huddleston v. U.S.*, 415 U.S. 814 (1974) (construing the legislative intent of Gun Control Act); *See generally* Zimring, *Firearms and Federal Law: The Gun Control Act of 1968*, 4 J. LEGAL STUD. 133 (1975).

conduct applicable to that of a reasonable person. However, elsewhere in the Omnibus Crime Control and Safe Streets Act, Congress created an express statutory cause of action for damages accruing from illegal wiretapping.[49] The existence of this provision in the Act greatly diminishes the probability that Congress performed a balancing of interests suitable to serve as the standard of conduct of a reasonable person here.

The public policy considerations enumerated above with respect to sec. 941.22, Stats., also militate against adoption of the federal statute as the standard of a reasonable person, although perhaps with less force. In those cases where the causation is reasonably direct, we are satisfied that a properly instructed jury would find negligence in those cases where the sellers had actual knowledge or reasonable cause to know that the purchaser was under twenty-one. Further, we remain convinced that limits of the duty of ordinary care provide the most sensible starting and stopping point for gun sellers' liability. Thus, both because of our doubts concerning the balancing of interests underlying Congressional enactment of the Gun Control Act, and because of the superiority of the duty of ordinary care as the standard of civil liability, we hold that violations of 18 U.S.C.A. §922 are not negligence *per se*.

### Common Law Negligence

The defendants argue that they were not negligent as a matter of law since they owed no duty to anticipate Connie Ratzel's "alleged criminal conduct." Defendants

---

[49] Pub. L. No. 90–351, Title III, §2520, 82 Stat. 197, *reprinted in* [1968] U.S. CODE CONG. & AD. NEWS 237, 267 (codified at 18 U.S.C.A. §2520). Title IV of Pub. L. No. 90–351 included the criminal provision proscribing sales of handguns to persons under 21.

assert Ratzel committed a crime by shooting Olson. Even if Ratzel did commit a crime, this alone does not make a probability of harm unforeseeable as a matter of law.[50]

The existence and scope of a duty of care is one element of a cause of action in negligence and involves a question of law for the court. These issues are properly raised by a motion challenging the legal sufficiency of a complaint.[51] Each individual is held, at the very least, to a standard of ordinary care in all activities.[52] The concept of duty in Wisconsin has been described as "inexorably interwoven with foreseeability."[53]

Where the facts alleged to give rise to a duty are agreed upon,[54] the question of the existence of a duty is one of law. This question is closely related to the question of whether a defendant is not negligent as a matter

[50] Restatement (Second) of Torts §302B, especially Illustration 11; §308, especially Comment b (1965). *Cf.* Restatement (Second) of Torts, §§440, 447, and 448 (regarding foreseeability and superseding cause) (1965); *Compare generally Weihert v. Piccione,* 273 Wis. 448, 78 N.W. 757 (1956) with *Kowalczuk v. Rotter,* 63 Wis.2d 511, 217 N.W.2d 332 (1974) (proprietor's duty to foresee and act to prevent injury to his invitees by intentional acts of third parties, Wis. J I—Civil 1027.5 (1977)). *But see generally Korenak v. Curative Workshop Adult Rehab. Center,* 71 Wis.2d 77, 237 N.W.2d 43 (1976). Annot., 10 A.L.R.3d 619 (1966).

[51] *Coffey, supra* note 18, 247 N.W.2d at 135; *Ceplina, supra* note 20, 243 N.W.2d at 185.

[52] *Coffey, supra* note 18, 247 N.W.2d at 138; *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1, 11 (1975); *A. E. Inv. Corp. v. Link Builders Inc.,* 62 Wis.2d 479, 214 N.W.2d 764, 766 (1974).

[53] *Coffey, supra* note 18, 247 N.W.2d at 138.

[54] The "agreed" facts are those deemed admitted by a motion challenging the sufficiency of the complaint or deemed established by uncontroverted averment in a motion for summary judgment. *See Ceplina, supra* note 20, 243 N.W.2d at 185; *Schicker v. Leick,* 40 Wis.2d 295, 162 N.W.2d 66, 69 n. 1 (1968); *Jones v. Pittsburgh Plate Glass Co.,* 246 Wis. 462, 17 N.W.2d 562, 564 (1945).

of law, *i.e.*, based on the facts presented, no properly instructed, reasonable jury could find the defendant failed to exercise ordinary care. Generally, this question is for the jury and should be decided as a matter of law before trial only in rare cases.[55]

The complaint here provides only a bare outline of the circumstances from which a jury could find negligence in the defendants' sale of the pistol to Ratzel. The defendants did not submit any affidavits to provide a factual basis for a conclusive inference that no circumstances existed from which a reasonable jury could find a breach of the defendants' duty of ordinary care. Although the plaintiff has affirmatively alleged only that defendants "negligently or intentionally" sold a minor a pistol and has submitted no affidavits, the plaintiff was only required to draft a complaint containing "a short and plain statement of the claim, identifying the transaction, occurrence or event out of which the claim arises and showing that the pleader is entitled to relief."[56]

Liberally construing the complaint and drawing all reasonable inferences in favor of it,[57] we cannot say as a matter of law that a reasonable, properly instructed jury could not find that the defendants' sale amounted to a breach of their duty of ordinary care based on the evidence which the complaint entitles the plaintiff to adduce at trial.[58] The defendants contend that their

---

[55] *Ceplina, supra* note 20.

[56] §802.02(1), Stats. (1975); *See* Judicial Council Committee Note, §802.02, W.S.A. *But see e.g., International Found. v. City of Brookfield,* 74 Wis.2d 544, 247 N.W.2d 129, 131 (1976).

[57] *E.g., Padilla v. Bydalek, supra* note 20, 203 N.W.2d at 17.

[58] *Ceplina, supra* note 20; *Schicker v. Leick, supra* note 54.

Based on our holding, violations of §941.22, Stats., or 18 U.S.C.A. §922(b)(1) is not relevant evidence of negligence. *See Schroeder v. Northern States Power Co., supra* note 11.

conduct created at most a bare possibility of injury to someone and thus was not negligent as a matter of law. To present a jury question at trial, the plaintiff must adduce evidence sufficient to show the defendant's conduct created more than a bare possibility of harm.[59] On the record before us, it cannot be said as matter of law that the plaintiff will be unable to show an unreasonable probability of harm resulted from this sale of a handgun to a juvenile.

### Public Policy & Superseding Cause Issues

 The defendants argue that public policy considerations should bar recovery by the plaintiff even if the plaintiff might otherwise be entitled to recovery for common law negligence. In declining to adopt the state or federal criminal standard of conduct as that of a reasonable person in negligence cases, we relied in part on public policy considerations. However, these same considerations do not necessarily preclude liability for defendants who have breached their duty of ordinary care. In some cases, the causal connections between transfer and injury are so remote that the court should invoke public policy[60] or the law of superseding cause[61] to prevent unfair imposition of liability. It is usually better practice to submit the issues of negligence and causation to the jury

[59] *Buel v. La Crosse Transit Co.*, 77 Wis.2d 480, 253 N.W.2d 232, 337 (1977); *Grube v. Moths, supra* note 11, 202 N.W.2d at 266; *Meihost v. Meihost, supra* note 14, 139 N.W.2d at 121.

[60] *E.g., Coffey, supra* note 18, 247 N.W.2d at 140.

[61] Restatement (Second) of Torts, §§447, 448, 449 (1965). See §448, Comment a. *See generally United States Fidelity & Guar. v. Frantl Indus.*, 72 Wis.2d 478, 241 N.W.2d 421, 428 (1976); *Diener v. Heritage Mut. Ins. Co.*, 37 Wis.2d 411, 155 N.W.2d 37, 41 (1967); *Merlino v. Mutual Service Cas. Ins. Co.*, 23 Wis.2d 571, 127 N.W.2d 741 (1964); *McFee v. Harker*, 261 Wis. 213, 52 N.W.2d 381, 384 (1952).

before balancing various policy factors against a plaintiff's right to recover.[62] Whether reaching public policy considerations before trial is appropriate in a given case depends on whether the issues are so complex or the factual connections so attenuated that a full factual resolution is necessary to a fair and complete evaluation of the policy considerations involved.[63]

In this case, the factual connections are sufficiently attenuated and the issues sufficiently complex that this court cannot fairly or completely balance the policy factors which the defendants argue should preclude liability. The record before us indicates little more than that a pistol was sold to a minor who later shot and injured the plaintiff. It is devoid of any evidence of the circumstances surrounding the sale or shooting. Although consideration of the defendants' public policy arguments is premature on this record, they may renew them after the factual connections in this case have been clarified.

Likewise, the defendants' argument that Ratzel's purportedly intentional and criminal act constitutes a superseding cause of the plaintiff's injuries is premature. If, as a matter of law, the trial court determines after the trial that Ratzel's conduct was a superseding cause, the defendants would be relieved of liability for the plaintiff's injuries. However, this determination is to be made after the verdict has been rendered.[64]

*By the Court.*—Order affirmed.

---

[62] *E.g., Coffey, supra* note 18; *Padilla v. Bydalek, supra* note 20, 203 N.W.2d at 20.

[63] *Id.* *See also Korenak v. Curative Workshop Adult Rehab. Center, supra* note 50.

[64] *United States Fidelity & Guar. v. Frantl Indus., supra* note 61, 241 N.W.2d at 428; *Ryan v. Cameron,* 270 Wis. 325, 71 N.W.2d 408, 411 (1955). *See also* Restatement (Second) of Torts, §453 (1965).