METZ, Appellant, vs. MEDFORD FUR FOODS, INC., Respondent.

*April 8—May 6, 1958.*

For the appellant there was a brief and oral argument by *Clifford L. Curran* of Medford.

For the respondent there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and *Nikolay, Jensen & Scott* of Medford, and oral argument by *Richard P. Tinkham* and *Corliss V. Jensen.*

BROWN, J.  We consider that the learned trial court correctly overruled the demurrer to the defense of waiver and assumption of risk because the purchaser was a director of defendant corporation.  If plaintiff is in fact guilty of contributory negligence in the use of defendant's product that may defeat his claim but we agree that such a defense is not established by proof merely that he was one of defendant's directors.

The other affirmative defense is that plaintiff's agreement, to hold defendant harmless in all respects from liability arising from the use of defendant's products, defeats any cause of action which otherwise plaintiff might have.  The court determined this defense to be good, if proved, and therefore overruled plaintiff's demurrer to it.

We consider this was error.

Sec. 94.72 (14) (b), Stats., provides:

"Any manufacturer, importer, jobber, firm, association, corporation, or person who shall sell, offer, or expose for sale or distribute any feeds mixed or adulterated with any substance or substances injurious to the health of livestock or poultry shall be deemed guilty of a misdemeanor. . . ."

The present defendant was defendant in *Arndt Brothers Minkery v. Medford Fur Foods* (1957), 274 Wis. 627, 80 N. W. (2d) 776. In that action we held that when adulterated feed is sold sec. 94.72 (14) (b), Stats., is violated. In this we followed our decision in *McAleavy v. Lowe* (1951), 259 Wis. 463, 477, 49 N. W. (2d) 487. In *McAleavy* we also held that:

". . . anyone who violated such a statute would be held guilty of negligence *per se* in a civil action for damages. The harsh result of the present case could have been avoided if the legislature had inserted the word *'knowingly'* in the statute at time of enactment, but this the legislature did not see fit to do."

While we might infer that the exculpatory agreement now in question was defendant's method of escaping the *McAleavy* result in the event it made another sale of mink food adulterated with a poisonous substance, there is no need for inference because defendant's brief tells us that is exactly the purpose of the agreement. The brief says:

"The hazards of the mink-feed business, the possibility of botulinic toxin in the feed 'without fault' and beyond the control of, and not detectable by defendant seller, required that it sell only to buyers who agreed to assume the risk and bear the burden of loss themselves."

The learned trial court declared, we think correctly, that:

"The cases are uniform that, because of the social considerations involved, agreements whereby an employee agrees to waive all claims against his employer for injuries which might be sustained in the future, arising out of his employment, are void as against public policy. So too are agreements affecting the general public in connection with the safe-place statute. The general public has too great an interest in the enforcement of the safe-place statute, through prosecution for recovery of damages sustained by reason

of a violation of such statute, to allow such claims to be waived by prior agreement. An agreement waiving claims for damages or injuries which might be sustained in the future in a 'place of employment' or 'public building' is closely akin to agreements whereby a member of the general public agrees to waive claims for damages for negligence against public utilities, common carriers, and the like. These latter agreements have been condemned in every jurisdiction."

But then the court continued:

"The sale of mink food is not a business wherein the seller is charged with a duty of public service. A public interest is not involved, nor does the public interest require the performance of a private duty, *i.e.,* the sale of mink food free from contamination."

We are not able to follow the court in this distinction. When the legislature forbade the sale of adulterated feed, declared the performance of the forbidden act to be a criminal offense and imposed a penalty, the public interest in the subject is manifest and public policy declared. We may agree with counsel for respondent that his client intended no wrong and was only trying to protect itself if in spite of all precautions adulterations crept into its product. But the statute is so drawn that a seller is not excused if he exercises ordinary or extraordinary care or if he is ignorant of adulteration in the feed he sells. His sale is an act absolutely prohibited and violation of the prohibition is negligence *per se*.

We consider that the principle which makes void the exculpatory agreements in the examples just referred to, as cited by the trial court, applies to the instant transaction in which the sale was both prohibited and penalized.

Respondent submits that *Chapman v. Zakzaska* (1956), 273 Wis. 64, 76 N. W. (2d) 537, sustains the validity of the present agreement. There a seller of a second-hand automobile did not turn the speedometer back to zero, as sec.

218.01 (7a) (a), Stats., required him to do. Violation of the statute is, by its terms, a misdemeanor. The buyer kept the car but did not pay for it and the trial court held that he need not do so. This was on the theory that the violation rendered void the contract to pay. We reversed.

Present respondent concludes that the reversal there requires us to say now that the violation of sec. 94.72 (14) (b), Stats., does no more than to subject the seller to the specific penalties of the statute, without voiding the contract in question.

The contracts in the two cases are different in purpose. In *Chapman v. Zakzaska, supra,* the contract was one for the payment of merchandise. Now we have a contract designed to avoid the consequences of a seller's breach of the statute. We think this is quite a different matter and distinguishes the cases.

We consider that the instant case is governed by *Kuhl Motor Co. v. Ford Motor Co.* (1955), 270 Wis. 488, 71 N. W. (2d) 420. The statute in question there prohibited an automobile manufacturer from canceling or revoking a dealer's franchise without just cause, having regard to the dealer's equities. Violation was declared a misdemeanor and penalized. Kuhl, the dealer made an agreement that Ford could revoke the franchise at will upon sixty days' notice. Ford gave Kuhl sixty days' notice and revoked the franchise. Kuhl brought an action to restrain the revocation. The complaint set out the agreement. Ford demurred. We held that the demurrer should be overruled and trial had to discover whether the cancellation was for cause or, though within the terms of the agreement, was arbitrary in violation of the statute.

And we said:

"If the provision of the agreement permitting the Ford Motor Company to terminate the franchise upon sixty days' advance notice is to be interpreted as authorizing the Ford

Motor Company to unfairly cancel the same without just provocation, then such provision would be void." *Kuhl Motor Co. v. Ford Motor Co., supra,* page 500.

And we repeated what was said in *Menominee River B. Co. v. Augustus Spies L. & C. Co.* (1911), 147 Wis. 559, 571, 132 N. W. 1118:

" 'A contract made in violation of a statute or for performance of an act which is prohibited by statute is void and will not be enforced by the court. This is true whether there is a prohibition and a penalty or merely a prohibition.' " *Kuhl Motor Co. v. Ford Motor Co., supra,* page 498.

We think the similarities between the *Kuhl Case* and the present one are decisive, viz.:

In each case there was a statute enacted for plaintiff's protection, with a penalty prescribed for a violation. There was an agreement between the two parties by which plaintiff gave up the redress which, but for the agreement, he would have consequent upon the seller's breach of the statute. When the respective plaintiffs brought their actions for alleged breaches the defendants demurred in reliance upon the agreements.

In *Kuhl* we held that if proof should show that Kuhl's franchise was revoked in violation of the statute its contract excusing that act was void and unavailable to Ford as a defense to Kuhl's action. Presently we should, and do, reach the same conclusion. Metz's agreement made in contemplation of a sale by defendant of adulterated feed in violation of the statute is void and unavailable to Medford Fur Foods as a defense to Metz's action.

The demurrer to this affirmative defense should have been sustained.

*By the Court.*—Order reversed, and cause remanded with directions to sustain plaintiff's demurrer and for further proceedings not inconsistent with this opinion.

HALLOWS, J., took no part.

(*Dissent.*) BROADFOOT and WINGERT, JJ., dissent, being of opinion that in view of the penalties specifically prescribed for violation of sec. 94.72 (14) (b), Stats., even in the absence of fault, the statute should not be construed as also prohibiting an agreement to hold a violator harmless from tort or contract liability.