JAMES E. DOYLE, JR., District Attorney, Dane County
You have asked my opinion as to whether liquor and beer wholesalers may charge interest on retail accounts which remain unpaid past the statutory credit limits, those being thirty days in the case of intoxicating liquor and fifteen days in the case of fermented malt beverages.
The following statutes are pertinent to your question.
Section 66.054 (8a)(a), Stats., provides that:
 "No retail licensee under sub. (7) or (8) shall receive, purchase or acquire fermented malt beverages directly or indirectly from any licensee except upon terms of cash or credit for not exceeding fifteen days."
Section 176.05 (23)(a), Stats., contains language virtually identical to the statute just quoted with respect to intoxicating liquor *Page 338 
except that the maximum term of credit allowed is thirty days as opposed to fifteen days.
Section 176.17 (2), Stats., provides in part as follows:
 "No manufacturer, rectifier or wholesaler [of intoxicating liquors] shall furnish, give, or lend any money or other thing of value, directly or indirectly, or through a subsidiary or affiliate, or by any officer, director, or firm member of the industry, to any person engaged in selling products of the industry for consumption on the premises where sold, . . ."
Section 66.054 (4)(a), Stats., provides substantially the same restriction on relationships between wholesalers and retailers in the beer industry.
In an informal Attorney General's opinion, dated July 25, 1961, it was concluded that:
 "The object and intent of sec. 176.17 (as well as 66.054 (4) relating to fermented malt beverages) is to prevent manufacturers and wholesalers from acquiring complete or partial control of specific class B retailers, directly by owning them or indirectly by creating financial or moral obligations. The purpose is clearly to assure the freest competition in the industry by preventing monopolistic practice, and to divorce entirely the wholesaler from the class B retailer.
 "Other provisions generally manifesting this intent are . . . 176.05 (23) restricting the extension of credit by wholesaler to retailers." (Emphasis supplied.)
You do not indicate how such interest charge would be imposed. It is my understanding that at times in the past, within the industry, such interest charges have been imposed by specific and explicit terms of the sales agreement between the wholesaler and retailer. Such terms state that accounts which exceed the fifteen or thirty-day limit would then be carried with interest at one percent per month on the unpaid balance until paid. The parties in effect would then be contemplating that the account would not in fact be paid in full on or before the expiration of the statutory credit limits and would be agreeing that the wholesaler would thereby carry the retailer beyond the pertinent limit. *Page 339 
I conclude that such an agreement would constitute a contract to extend credit beyond the statutory maximum. It would therefore violate sec. 66.054 (8a)(a), Stats., in the case of beer and sec. 176.05 (23)(a), Stats., in the case of intoxicating liquor.
One of the elementary rules in contract law is that parties may not contract in violation of the law. The contracts discussed above are in violation of the credit restriction laws, which are penal statutes, and as such would be void. See Washington Countyv. Groth, 198 Wis. 56, 223 N.W. 575 (1929); Metz v. Medford FurFoods, Inc., 4 Wis.2d 96, 90 N.W.2d 106 (1958). See also annotation in 55 A.L.R.2d 481, 482 to the effect that courts are in substantial agreement that such contracts in violation of criminal or penal statutes are void even though the statutes do not expressly by their terms so provide.
Such an agreement for the imposition of an interest charge may also constitute a violation of sec. 66.054 (4)(a), Stats., or sec. 176.17 (2), Stats., the tied-house provisions relating to beer and intoxicating liquor respectively. In part these statutes prohibit wholesalers from furnishing anything of value, directly or indirectly, to Class "B" retailers. By entering into such an agreement, thereby carrying the retailer and extending credit beyond the statutorily allowed limit, the wholesaler has committed an act of forbearance in regard to the retailer. Forbearance is defined as follows:
 "Act by which creditor waits for payment of debt due him by debtor after it becomes due. . . . Indulgence granted to a debtor. . . ." Black's Law Dictionary, revised 4th edition, p. 773.
See also the discussion in State v. J. C. Penney Co., 48 Wis.2d 125,179 N.W.2d 641 (1970), to the effect that the obligation to pay for goods sold arises upon their purchase, and if payment is not made contemporaneously with delivery of the goods both a debt and a debtor-creditor relationship are created, and further that the act on the part of the creditor in restraining from collecting that debt, when it becomes due, constitutes a forbearance.
The position that extension of credit beyond the time limits stated in the relevant statutes may violate the tied-house provisions, as discussed above, is further strengthened as to intoxicating liquor by the following provision in the intoxicating liquor tied-house statute, sec. 176.17 (2), Stats.: *Page 340 
 "Nothing herein contained shall affect the extension of commercial credits for the products of the industry sold and delivered in compliance with s. 176.05 (23)."
The obvious implication is that extension of credits not in compliance with sec. 176.05 (23), Stats., would violate the prohibitions contained in sec. 176.17 (2), Stats.
In my opinion such forbearance is something of value furnished the retailer by the wholesaler. One of the effects which I perceive from the selected use of forbearance is the acquisition of at least partial control of Class "B" retailers by creating financial or moral obligations. This is one of the very evils the tied-house laws were enacted to prevent.
As a corollary to the discussion of your main question the following issue may be raised. If liquor and beer wholesalers are prohibited from imposing such interest charges as stated in the above discussion, are they not being deprived of some of the equal protection guarantees contained in the United States Constitution since other types of commercial creditors may charge interest? The answer is that they are not because of the unique nature of the state's power to regulate the liquor industry.
The unique nature of the state's power is well set forth in an annotation to be found at 34 L.Ed.2d 805, Comment Note — Extentof State Regulatory Power Under 21st Amendment, sec. 2, pp. 807, 808, wherein it is stated that:
 "It is settled that under the twenty-first amendment the states have the power to absolutely prohibit or to limit and regulate traffic in intoxicating liquors within their borders, and that such power is not generally limited by the commerce clause of the federal constitution, insofar as such regulations discriminate against or impose special burdens on activities of persons involved in such traffic."
Our supreme court, in Vieau v. Common Council, 235 Wis. 122,292 N.W. 297 (1940), stated as follows:
 "The regulation of the sale of intoxicating liquors does not come within the equality provisions of the United States Constitution." *Page 341 See also City of Kenosha v. Bruno, 412 U.S. 507, 515 (1973) andMoedern v. McGinnis, 70 Wis.2d 1056, 236 N.W.2d 240 (1975).
I therefore conclude that the imposition of interest charges under the facts and circumstances stated above is contrary to law, violates the stated provisions of the statutes relating to intoxicating liquor and fermented malt beverages and is therefore prohibited.
Not every imposition of interest or penalty upon the collection of delinquent accounts will violate the tied-house or credit restriction statutes cited above, however.
The first portion of this opinion was directed solely at the described type of specific agreement which imposed interest at a stated rate per month on overdue accounts until the account was paid, thereby extending credit beyond the statutorily allowed limit and resulting in the furnishing of something of value to the retailer. This portion is directed at the imposition of interest or a penalty upon the collection of delinquent accounts owed to the wholesaler by the retailer, said interest or penalty not being imposed as the product of a continuing agreement between the wholesaler and retailer.
Generally speaking, where money belonging to another was not paid at the time when it should have been paid, interest is generally allowed to be added to the principal amount due, the theory being that nonpayment benefits the debtor and injures the creditor. See 47 C.J.S. Interest sec. 13. Interest is generally allowable on accounts which have become settled and liquidated (although generally not allowable on running, open and unliquidated accounts). 47 C.J.S. Interest sec. 16. See alsoDeToro v. DI-LA-CH, Inc., 31 Wis.2d 29, 142 N.W.2d 192 (1966).
The types of accounts which we are discussing are settled and liquidated once they exceed the legal credit period, the credit restriction statutes prohibiting such accounts from being open, running and unliquidated.
It would appear that one of the purposes to be accomplished by the statutes is that retailers pay the accounts within the stated time periods to avoid control, either direct or indirect, by the wholesaler over the retailer. The imposition of a penalty or interest upon the collection of delinquent, settled and liquidated accounts by the wholesaler would result in furthering that purpose. This type of *Page 342 
imposition would not appear to constitute forbearance nor does it appear to result in the extension of further credit beyond the allowable limit in violation of the credit restriction statutes.
For additional guidance I refer you to the following section of the Wisconsin Administrative Code which may be of use as an aid, although not directly applicable to the liquor and beer statutes, in determining whether an interest or penalty charge is in fact a finance charge and therefore impermissible. Wisconsin Administrative Code section Bkg 80.07 provides as follows:
 GENERAL DEFINITIONS; FINANCE CHARGE. A delinquency or default charge is not a finance charge within the meaning of section 421.301 (20), Wis. Stats. if imposed for actual unanticipated late payment, delinquency, default or other such occurrence. However, when a merchant's billings are not paid in full within a stipulated time period and under such circumstances the merchant does not, in fact, regard such accounts in default (For example, by customarily failing to institute collection activity or by continuing to extend credit) and imposes charges periodically for delaying payment of such accounts from time to time until paid, the charge so imposed comes within the definition of a finance charge and the credit so extended comes within the definition of open-end credit."
I therefore conclude that the collection of a penalty or interest in connection with the collection of delinquent, settled and liquidated accounts which involves no forbearance and no illegal extension of credit is not prohibited. Section 138.04. Stats., provides:
 "LEGAL RATE. The rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or a shorter time; but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed in s. 138.05, in which case such rate shall be clearly expressed in writing."
I also conclude that said interest or penalty is limited to the five percent per annum provided for in sec. 138.04, Stats., in light of my conclusion that an agreement for a higher rate is prohibited.
BCL:JM *Page 343 
 ADDENDUM September 20, 1978
Mr. Robert P. Russell Corporation Counsel Milwaukee County Courthouse 901 North 9th Street Milwaukee, Wisconsin 53233
Dear Mr. Russell:
On August 29, 1978, this office issued an opinion, OAG 62-78, which stated in part that a county board which has created a board to administer a county transit system under powers granted in secs. 59.025 (3) and (4) and 59.968 (7) (c), Stats., can designate the chairman of the county board as the appointing authority for members of such board.
In a memorandum decision dated December 14, 1977, in Case No. 452-859, William F. O'Donnell, Milwaukee County Executive,Plaintiff v. F. Thomas Ament, Chairman of the Board ofSupervisors for Milwaukee County, Defendant, Circuit Judge Leander J. Foley, Jr., ruled that that part of the Milwaukee County ordinance which purported to grant the county board power to appoint members to the Milwaukee County Transit Board was invalid and that the appointing power resided in the county executive. Declaratory judgment to that effect was entered June 2, 1978, and notice of entry was served on the same date. We are not advised that any appeal was taken.
Guideline 7 of the requirements to be observed by district attorneys and county corporation counsels in requesting opinions reads:
 "7. An opinion normally should not be requested on an issue that is the subject of current or reasonably imminent litigation. Presumably, the answer to the issue will be furnished by the court's decision and opinions of the Attorney General should not be utilized for the purpose of briefing current litigation." See 62 Op. Att'y Gen. Preface (1973). *Page 344 
This guideline reflects our deference to the courts and is strictly observed by this office.
Your request was dated February 17, 1977, and the court action referred to above was commenced in April of that year. We regret that we were not timely advised that the question involved was in litigation or that declaratory judgment had been in fact entered. Had we been so advised we would not have issued that portion of the opinion.
We hereby withdraw all of that portion of the opinion which states or supports the conclusion that the chairman of the county board can be designated as the appointing authority for the board created under secs. 59.025 (3) and (4) and 59.68 (7) (c), Stats.
Sincerely yours,
 Bronson C. La Follette Attorney General BCL:aag
 *Page 1