Helen Anne **LUKASZEWICZ** et al., Plaintiffs,

v.

**ORTHO PHARMACEUTICAL CORPORATION** et al., Defendants.

Civ. A. No. 79-C-93.

United States District Court, E. D. Wisconsin.

March 31, 1981.

As Amended April 28, 1981.

Charles W. Oppitz, Milwaukee, Wis., for plaintiffs.

Edmund W. Powell, Borgelt, Powell, Peterson & Frauen, S.C., Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a products liability suit brought pursuant to 28 U.S.C. § 1332.

The plaintiff Helen Anne Lukaszewicz alleges that the defendant manufactured and sold Ortho-Novum, an oral contraceptive, in a defective condition unreasonably dangerous to the plaintiff, and that as a result of her use of the product she suffered a cerebral accident on or about January 20, 1976. Her husband Thomas P. Lukaszewicz seeks damages for loss of society and consortium.

During a status conference held on January 21, 1981, the parties agreed that a threshold legal issue in this action is whether or not the defendant had a duty to warn patients directly of the possible side effects of Ortho-Novum or whether its duty to warn was satisfied by providing warnings to physicians. Plaintiff agreed that if the defendant had no duty to warn her directly, then she has no claim against the defendant and the suit should be dismissed. That issue has now been briefed by the parties and is before the court for decision.

Ortho-Novum is a prescription drug regulated by the federal Food, Drug, and Cosmetic Act, as amended, 21 U.S.C. § 321 et seq. It has certain known side effects which may be harmful to the user. Plaintiff's claim is that she began to suffer migraine headaches in the summer of 1975 as a result of her use of the drug, and in January 1976 suffered a cerebrovascular accident caused by the migraines and therefore caused, in turn, by the Ortho-Novum.

Section 402A of the Restatement (Second) of Torts, which has been adopted in Wisconsin, *Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967), imposes liability on the manufacturer of a product which is sold " 'in a defective condition unreasonably dangerous to the user or consumer' " regardless of whether the manufacturer " 'has exercised all possible care in the preparation and sale of his product.' " *Kozlowski v. John E. Smith's Sons Company*, 87 Wis.2d 882, 891, 275 N.W.2d 915 (1979), quoting from § 402A. Comment k to the section provides in part:

"k. Unavoidably unsafe products. There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. * * * Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. * * * The seller of such products, again with the qualification that they are properly prepared and mar-

keted, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

As a general rule the courts of this country universally hold that in the case of prescription drugs, the provision of proper warnings to a physician will satisfy the manufacturer's duty to warn since the patient cannot obtain the drug except through the physician. See, e. g., *Timm v. Upjohn Company*, 624 F.2d 536, 538 (5th Cir. 1980); *Davis v. Wyeth Laboratories*, 399 F.2d 121, 129–130 (9th Cir. 1968); *McCue v. Norwich Pharmacal Company*, 453 F.2d 1033 (1st Cir. 1972); *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82 (8th Cir. 1966); *Hoffman v. Sterling Drug, Inc.*, 485 F.2d 132 (3d Cir. 1973); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 425–426 (2d Cir. 1969).[1] This rule has been followed in cases specifically involving the use of oral contraceptives. For example, in *Chambers v. G. D. Searle & Co.*, 441 F.Supp. 377 (D.Md.1975), aff'd 567 F.2d 269 (4th Cir. 1977), the district court stated at page 381:

" * * * this case concerns a prescription drug which is regulated by federal law. *See* 21 U.S.C. § 353(b)(1)(C). Thus, the drug can be used only under the professional supervision of a doctor licensed by law to administer the drug. Accordingly, it is quite clear that the warning which must be examined here is that given to the physician and not that given to the user. *See Sterling Drug,*

*Inc. v. Cornish*, 370 F.2d 82 (8th Cir. 1966). As the Eighth Circuit said in that case, 'the purchaser's doctor is a learned intermediary between the purchaser and the manufacturer.' Other cases have termed the doctor an intervening party who is required to exercise his own independent judgment on the basis of the technical information furnished. See *Carmichael v. Reitz*, 17 Cal.App.3d 958, 95 Cal.Rptr. 381 (1971)."

See also *Goodson v. Searle Laboratories*, 471 F.Supp. 546, 548 (D.Conn.1978); *Lindsay v. Ortho Pharmaceutical Corp.*, 481 F.Supp. 314, 322, 347, 352 (E.D.N.Y.1979); *Dunkin v. Syntex Laboratories, Inc.*, 443 F.Supp. 121, 123 (W.D.Tenn.1977).

The federal administrative regulations adopted under the federal Food, Drug, and Cosmetic Act do require that in the case of oral contraceptives, warnings in the form of package inserts be given to the patient as well as to the physician. 21 C.F.R. § 310.-501 provides in part:[2]

"(a) *Oral contraceptives.* (1) The Commissioner of Food and Drugs concludes that the safe and effective use of oral contraceptive drug products requires that patients be fully informed of the benefits and risks involved in the use of these drugs. Information in lay language concerning effectiveness, contraindication, warnings, precautions, and adverse reactions shall be furnished to each patient receiving oral contraceptives. This information shall be given to the patient by the dispenser in the form of a brief summary of certain essential information in-

---

1. An exception has been made in a few cases involving polio vaccines which, although technically prescription drugs, were dispensed, as the manufacturer knew they would be, in the course of massive immunization programs without individualized prescription by a doctor. In those cases the manufacturer's duty to warn has been held to extend to the ultimate consumer. *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir. 1968); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir. 1974).

2. 21 C.F.R. § 310.501 has been modified since first proposed. See 40 Federal Register 5353 (Feb. 5, 1975); 40 Federal Register 12259 (March 18, 1975), as amended at 43 Federal

Register 4220 (Jan. 31, 1978); 43 Federal Register 7618 (Feb. 24, 1978). As originally enacted, effective March 7, 1975, however, it required disclosure to users of information, including the possibility of side effects and the availability from the physician of written material discussing the hazards of the drug. Section 310.-501(2). The regulation required inclusion in the material provided to the physician for use by the patient of warnings as to possible side effects and the need for special supervision of some patients, including those with migraine. Section 310.501(6). 40 Federal Register 5353–5354.

cluded in each package dispensed to each patient, and in a longer, detailed labeling piece in or accompanying each package dispensed to each patient. * * *

"(2) The brief summary shall specifically include the following:

\* \* \* \* \* \*

"(3) The detailed patient labeling shall be a separate printed leaflet independent of any additional materials. It shall specifically include the following:

\* \* \* \* \* \*

"(ix) A statement of common side effects, including nausea and vomiting, weight change, darkening of the skin, changes in menses, and a statement of other serious side effects, *including worsened migraine*, and worsened heart or kidney disease due to fluid retention, growth of uterine fibroid tumors, depression, jaundice, delayed return to fertility, blood pressure elevation, decreased glucose tolerance and elevated blood lipids." (Emphasis added.)

Several of the courts discussing the duty to warn imposed on a manufacturer of oral contraceptives have obviously been aware of the federal regulations requiring provision of information to the patient, *Lindsay v. Ortho Pharmaceutical Corp.*, supra; *Goodson v. Searle Laboratories*, supra; *Dunkin v. Syntex Laboratories*, supra, but without specific discussion none of them have used 21 C.F.R. § 310.501 to impose on a manufacturer of oral contraceptives a duty to warn the patient as well as the doctor, a breach of which would give rise to strict liability in tort to the patient under the applicable state law.

█ Section 286 of the Restatement (Second) of Torts provides:

"§ 286. When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

The Wisconsin Supreme Court has adopted the principle embodied in that section in the following manner:

"* * * the current Wisconsin approach is 'where a statute is designed to protect a class of persons from a particular type of harm, a violation of the statute which results in that type of harm to someone in the protected class constitutes negligence *per se*.'" *Olson v. Ratzel*, 89 Wis.2d 227, 239, 278 N.W.2d 238 (Ct.App. 1979), quoting *Kalkopf v. Donald Sales and Mfg. Co.*, 33 Wis.2d 247, 147 N.W.2d 277 (1967), quoting *Meihost v. Meihost*, 29 Wis.2d 537, 139 N.W.2d 116 (1966).

By "statute" is meant both state and federal legislative and administrative enactments. *Olson v. Ratzel*, supra, at 246, 278 N.W.2d 238; *Locicero v. Interpace Corporation*, 83 Wis.2d 876, 266 N.W.2d 423 (1978). A finding of "negligence per se" serves to relieve a plaintiff in a products liability case from proving specific acts of negligence. *Olson v. Ratzel*, supra, at 240 n. 16, 278 N.W.2d 238. See also *Metz v. Medford Fur Foods, Inc.*, 4 Wis.2d 96, 90 N.W.2d 106 (1958); *Dippel v. Sciano*, 37 Wis.2d 443, 462, 145 N.W.2d 55 (1967).

In *Pharmaceutical Manufacturers Association v. Food and Drug Administration*, 484 F.Supp. 1179 (D.Del.1980), the Court upheld 21 C.F.R. § 310.515 against a challenge brought by various associations of drug manufacturers and doctors. This regulation is one of four under the federal Food, Drug, and Cosmetic Act requiring warnings to patients in connection with the dispensation of prescription drugs. It found that the congressional intent behind enactment of 21 U.S.C. §§ 352 and 353, regarding misbranding of drugs, was "to make the

prescribing physician the primary source of information available to a consumer of a prescription drug" but—

" * * * Congress intended patients using prescription drugs, as well as those using over-the-counter drugs, to receive 'facts material with respect to consequences which may result from the use of the [drug] ... * * *.' Given this Congressional objective, I conclude that when the Commissioner determines that the possible side effects of a drug when used as customarily prescribed are sufficiently serious as to be material to the patient's decision on use of the drug, he or she may require disclosure of those side effects on the labeling pursuant to Section 701(a) [21 U.S.C. § 371(a)]." 484 F.Supp. at 1186.

Part of the rationale advanced by the Commissioner of Food and Drugs in enacting the patient labeling requirements for oral contraceptives and other drugs containing estrogen was to make patients more sensitive to the possible side effects of the drugs and enable them to identify drug-related symptoms which might otherwise go unnoticed. 484 F.Supp. at 1191.

Since 21 C.F.R. § 310.501 was enacted to protect persons like the plaintiff from the harmful side effects associated with oral contraceptives by warning them of such effects so as to enable them to recognize them and to seek qualified medical assistance, and since Wisconsin holds that the violation of such a regulation by one on whom it imposes a duty resulting in occurrence of the harm which the regulation was designed to prevent constitutes negligence per se, the defendant in this case did have a duty to warn the plaintiff Helen Anne Lukaszewicz of the possible side effects of Ortho-Novum, and her claim that she received no warning creates a triable issue of fact.

IT IS THEREFORE ORDERED that the action not be dismissed and that it proceed to trial as previously scheduled on May 11, 1981.