RENDERED: JUNE 7, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0215-MR

MEGSON FARMS, LLC AND BERVA
MEGSON                                                                    APPELLANTS

                                    APPEAL FROM FAYETTE CIRCUIT COURT
v.                          HONORABLE THOMAS L. TRAVIS, JUDGE
                                    ACTION NO. 20-CI-01115

KENTUCKY TRAINING CENTER,
LLC, D/B/A THOROUGHBRED
TRAINING CENTER                                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, EASTON, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: The appellants, Berva Megson and Megson Farms, LLC

appeal from the summary judgment granted in favor of the Kentucky Training

Center, d/b/a Thoroughbred Training Center. Having reviewed the briefs of the

parties and the record below, we affirm.

# FACTS

In March of 2019, Berva Megson executed a lease contract on behalf of Megson Farms, LLC ("Megson"), of which she was the sole member. Megson operates as a breeder and racing stable which specializes in rare white thoroughbred horses. The lease contract was for the use of a barn, located on the property of Kentucky Training Center, LLC, operating as the Thoroughbred Training Center ("the Center"), located in Fayette County. The barn was used to lodge six (6) of Megson's prize horses. Next door to Megson's barn, Elise Reed, another horsewoman, also housed horses.

Approximately a month later, a couple of Reed's horses were able to get past a paddock gate and may have entered into the barn where Megson's horses were stabled. A groom, employed by Megson, arrived early in the morning of April 5, 2019, to tend to the horses. The groom found the gate to Reed's paddock, which was adjacent to Megson's, was open and Reed's horses were just outside the Megson barn. While there were no witnesses to what occurred, several of Megson's horses were injured and one, Lake Barkley, was outside of his stall. Megson alleges the injuries to her horses were caused by the Reed horses. Megson

claimed the injuries led to the necessary euthanasia[1] of one animal and the ending of a racing and breeding career for at least one other.

Megson's trainer, Paul Brown, and Megson arrived at the barn and observed what the groom found. Brown focused upon the gate from Reed's paddock. He found the gate hooks were installed facing upwards, which could have made it easy for the horse to remove the gate and leave the paddock, explaining how the Reed horses may have gained entry to the Megson barn.

The gate hooks are made to be installed with the opening of the hinge hook facing either up or down. If the opening faces up, it may be easier for a horse to remove the gate from its hinges completely, but it will be less likely a horse would injure himself doing so. If one hook is placed facing down, it is more difficult to get to a horse in the paddock which might be injured or tied up in the gate, but it is also more difficult for a horse to defeat the gate. Reed acknowledged she placed the gate hooks both facing upwards. The Center likewise acknowledged purposefully placing gate hooks facing up so as to be able to gain access to horses in distress more quickly in hopes of minimization of any injury to any equine.

---

[1] While it is unnecessary for us to determine the injuries caused Megson's property and the cause thereof given our holding, we note both Reed and the Center allege the horse who Megson alleges was euthanized was actually put down over a month later after a subsequent injury. When the horses were evaluated by a veterinarian at the time of the incident, no lasting injuries were appreciated.

Megson filed suit against both the Center and Reed, alleging negligence and resultant damages. The Center first filed a motion to dismiss the complaint, which was denied except as to strict liability.[2] The Center and Reed filed separate motions for summary judgment in their respective favors. The Center argued the exculpatory clause contained in the contract executed between it and Megson was effective and, even if Megson could prove the Center was negligent concerning the orientation of the fence hooks, it was not liable to Megson.

Following a hearing, the trial court granted both defendants' motions for summary judgment in the same written order. As to the Center, the trial court held the lease agreement and its exculpatory clause were enforceable, holding "Megson contracted to relieve TTC [the Center] of liability arising from the condition of its premises and any negligence through the lease agreement." Noting Kentucky has a public policy supporting freedom to contract, and such clauses should be enforceable unless violative of some public policy, the trial court found the clause enforceable and entered summary judgment in favor of the Center, and Reed.

---

[2] This claim of liability by Megson was based in statute. Megson did not appeal the trial court's determination on strict liability.

On appeal following briefing, Megson and Reed filed a joint motion to dismiss Reed from this appeal, which was granted by this Court. Therefore, we review only the grant of summary judgment in favor of the Center. Having reviewed the briefs of the parties, the record below, and the orders of the trial court, we affirm the trial court.

## STANDARD OF REVIEW

Trial court determinations on motions for summary judgment pursuant to Kentucky Rules of Civil Procedure (CR) 56 are reviewed for "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996), *as modified* (Feb. 2, 1996). The evidence of record must be viewed in the light most favorable to the party opposing summary judgment and summary judgment should not be granted unless it is impossible for the party opposing summary judgment to produce evidence at trial warranting judgment in his/her favor. Since factual findings are not at issue, the appellate court need not defer to the trial court's summary judgment decision. *Id*. In other words, an appellate court reviews a trial court's grant of summary judgment *de novo*. *Hoffman v. Patterson*, 659 S.W.3d 839, 841 (Ky. App. 2021).

Particularly in cases involving contracts, courts must explore how and if statutory constraints concerning public policy affect the agreement reached

between the parties involved in the litigation.  The interpretation and effect of contract provisions is a matter of law, to be reviewed *de novo.*

> This is a contract case.  And the interpretation and legal effect of a contract is a matter of law.  So we review the trial court's and the Court of Appeals's determination of whether a contractual provision is void against public policy or otherwise invalid under a de novo standard, especially since findings of fact are not at issue.  The trial court's and Court of Appeals's construction of statutes is also entitled to no deference on appeal because statutory construction is a matter of law subject to a de novo standard of review.

*Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007) (footnotes omitted).  With these standards of review in mind, we address the issues of the case at hand.

## ANALYSIS

This is a case alleging negligence and injury.  In order to hold one liable for an injury, the one alleged to have been negligent must owe a duty to the party suffering injury.[3]  The trial court rested its decision to enter summary

---

[3] As our Supreme Court stated in *Hayes v. D.C.I. Properties-D KY, LLC*, 563 S.W.3d 619 (Ky. 2018):

> In any negligence case, a plaintiff must prove the existence of a duty, breach of that duty, causation between the breach of duty and the plaintiff['s] injury and damages.  Subsequent to this court's decision in *Hilen* [*v. Hays*, 673 S.W.2d 713 (Ky. 1984)], we held that "[t]he question of duty presents an issue of law." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992) (citing 57A Am. Jur. 2d *Negligence* § 20; *Prosser and Keeton on Torts*, § 37 (5th ed. 1984)).  When a court resolves a question of duty it is "essentially making a policy determination." *Mullins*, 839 S.W.2d at 248.

judgment in favor of the Center upon the contract between the parties, particularly the exculpatory clauses, which it held established the Center owed no duty to Megson. Further, the court held the Center owed Megson no duty as none was outlined in the agreement.[4] We agree.

At the outset we must recognize summary judgment should be cautiously applied.

> Granting a motion for summary judgment is an extraordinary remedy and should only be used "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant."

*Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013), *as corrected* (Nov. 25, 2013). If the trial court correctly found the contract provision effectively excluded liability for negligence of the type alleged here, the summary judgment was proper. In its order, the trial court set out the provisions of the contract between the Center and Megson at issue:

> Per Section 7 of the lease, Megson:
>
> releases, waives, discharges, covenants not to sue and assumes all risk of loss or damage, of whatsoever kind,

---

*Id*. at 622-23.

[4] The trial court went a step further and determined there was no breach of a duty as there was not one "right way" to install the gate hooks. However, it was unnecessary to proceed to this determination. Instead, we stop our analysis after upholding that portion of the court's order finding the exculpatory clause enforceable.

nature or description, to his person or to his property or to the person or property of another of any kind or nature, as a result of, or arising out of his accepting stalls at, transporting horses to or practicing for, or participating in horse training at TTC without regard to whether such loss, damage, or destruction be the result of the sole negligence of TTC or any persons in the employee (sic) or service of TTC, TTC premises, or of defective appliances, machinery or any other kind of property of TTC.

And then there is Section 12, the Equine Disclaimer, which states:

TTC shall not be liable or responsible for any injury or loss caused or suffered in any manner by or to the horse or horses or equipment owned by or in the custody of the owner (or any trainer or agent acting on behalf of an owner) while the said horses are on or off the premises, whether caused by the condition of the premises, by the negligence of any agent or employee of TTC or otherwise.

Concluding the language of the above provisions insulates the Center from any liability arising from negligence on the part of the Center, the trial court stated:

These provisions make it clear the Center was released by Megson from all liability arising from alleged negligence. Kentucky has a "broad public policy of freedom to contract," and unless the terms of the contract are plainly illegal or contrary to public policy, parties may structure their contracts to suit their intentions. Recognizing the importance of freedom to contract, the courts of this Commonwealth have traditionally enforced exculpatory provisions unless such enforcement violates public policy. This is especially true when it comes to farm and equine related activities.

-8-

(Footnotes omitted.)

The trial court then turned to a determination as to whether the terms of the contract were clearly illegal or contrary to public policy. Megson argued the parties possessed unequal bargaining power, claiming her lack of higher education put her at a disadvantage. But as the trial court pointed out, Megson is a respected horsewoman who has practice with contracts. "When, as in this case, the exculpatory clause is 'part of an arm's-length transaction between sophisticated parties with equal bargaining power[,]' *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 650 (Ky. 2007), the clause will be enforced 'unless such enforcement violates public policy.' *Id.*" *CLK Multifamily Management, LLC v. Greenscapes Lawn & Landscaping, Inc.*, 563 S.W.3d 706, 711-12 (Ky. App. 2018). The parties were not so unequal as to render the provisions of the contract adhesive or otherwise unenforceable.

In determining whether a provision is effective in exempting a party from future liability, the contract terms must be clear. While exculpation of future liability may not be a most favored term in a contract, it is one which can be upheld, as below, when certain terms are present:

> An exculpatory contract for exemption from future liability for negligence, whether ordinary or gross, is not invalid per se. *Cobb v. Gulf Refining Co.*, 284 Ky. 523, 145 S.W.2d 96, 99 (1940); *Greenwich Ins. Co. v. Louisville & N.R. Co.*, 112 Ky. 598, 66 S.W. 411, 413 (1902); *Jones v. Hanna*, 814 S.W.2d 287, 289 (Ky. App.

1991); *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky. App.1978); Restatement (Second) of Contracts § 195(2) cmt a (1981); Restatement (Second) of Torts § 496B cmt a (1965). However, such contracts are disfavored and are strictly construed against the parties relying upon them. *City of Hazard Mun. Hous. Comm'n v. Hinch*, 411 S.W.2d 686, 689 (Ky. 1967); *Cobb*, 145 S.W.2d at 99. The wording of the release must be "so clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable." 57A Am. Jur. 2d, *Negligence* § 52 (2004) (citations omitted). Specifically, a preinjury release will be upheld only if (1) it explicitly expresses an intention to exonerate by using the word "negligence;" or (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision. *Id.* at § 53 (citations omitted). "Thus, an exculpatory clause must clearly set out the negligence for which liability is to be avoided." *Id.* (citations omitted).

*Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky. 2005).

Contract section 7 states claims of negligence are being waived.[5] Due to the use of the disjunctive "or" in *Hargis*, only one of the four terms or interpretations must exist. As the provisions clearly stated, claims of negligence

---

[5] The waiver of liability expressly pertains to "*negligence* of TTC or any persons in the employee (sic) or service of TTC, TTC premises, or of defective appliances, machinery or any other kind of property of TTC." (Emphasis added.) However, there is no express waiver of liability from wanton or willful conduct, intentional torts or even from gross negligence.

were being waived and as Megson was not on unequal footing, we find the trial court correctly upheld the contract provision.

Such provisions can also be held to be unenforceable if found to be in violation of some duty imposed by a statute aimed at safety, as void against public policy.

> A party cannot contract away liability for damages caused by that party's failure to comply with a duty imposed by a safety statute. *Boyer v. Atchison, T. & S.F. Ry. Co.*, 34 Ill.App.2d 330, 181 N.E.2d 372, 375 (1962) (exculpatory provision in free pass to use railroad did not relieve railroad of liability for injury caused by its violation of Safety Appliance Act); *D.H. Davis Coal Co. v. Polland*, 158 Ind. 607, 62 N.E. 492, 495-96 (1902) (provision in contract of employment by which employee relieved employer of duty to provide safeguards required by statute held unenforceable); *Warren City Lines, Inc. v. United Refining Co.*, 220 Pa. Super. 308, 287 A.2d 149, 151 (1971) (exculpatory clause in contract for lease of gasoline pump did not relieve lessor of liability for explosion caused by lessor's violation of safety regulation: "Any attempt by a negligent party to exculpate himself for a violation of a statute intended for the protection of human life is invalid."); *Metz v. Medford Fur Foods, Inc.*, 4 Wis.2d 96, 90 N.W.2d 106, 108 (1958) (hold-harmless agreement in contract of sale was unenforceable where damages were caused by seller's violation of statute prohibiting sale of adulterated foods).

*Hargis*, 168 S.W.3d at 47-48. The trial court identified no safety statute or other provision which would constrain the contract. Most safety statutes which have been held to prevent this type of contracting away of liability involve safety to

humans, *i.e.*, unsafe food handling or adulterated food products or unsafe equipment which could cause human injury. *See id.*

Not only was the contract not constrained by an applicable safety statute, but the provisions at issue clearly waived only liability for negligence and not for wanton or willful conduct or for intentional tort. Furthermore, there has been no allegations of wanton or willful conduct or of intentional torts – instead, the complaint alleged only negligence and strict liability. So, there is no reason not to enforce the waiver provisions at issue. *See Cumberland Valley Contractors*, 238 S.W.3d at 654-55 (enforcing exculpatory clause agreed to by sophisticated parties with equal bargaining power, especially as there was no allegation of willful or wanton conduct in the record since "Kentucky courts have long upheld exculpatory clauses in arm's-length transactions between sophisticated parties with equal bargaining power and allowed such parties to bargain against liability for their own negligence and even gross negligence 'short of willfulness and wantonness'").

The freedom to contract, absent a statutory consideration, is paramount in Kentucky, particularly in our most important industries.[6] *See* Kentucky Revised Statute 247.401. The parties had every right to contract as they

_____

[6] "Recognizing the importance of freedom to contract, the courts of this Commonwealth have traditionally enforced exculpatory provisions unless such enforcement violates public policy." *Cumberland Valley Contractors*, 238 S.W.3d at 650.

-12-

saw fit so long as their contract was not illegal or void as against public policy. The contract and its provisions are enforceable, and the trial court's order is affirmed.

## CONCLUSION

The parties entered into a valid contract with enforceable exculpatory clauses. The trial court did not err in finding the contract terms enforceable and entering summary judgment. We affirm the trial court.

ALL CONCUR.

BRIEF FOR APPELLANT:

John S. Friend
Louisville, Kentucky

BRIEF FOR APPELLEE:

W. Chapman Hopkins
Lilian M. Williams
Lexington, Kentucky